[Civ. No. 20692. First Dist., Div. Two. June 17, 1963.]

JAMES A. GARDNER et al., Plaintiffs and Appellants, v. MOBIL OIL COMPANY, Defendant and Respondent.

Toff & Gordon and Melville A. Toff for Plaintiffs and Appellants.

Edward R. Fitzsimmons for Defendant and Respondent.

AGEE, J.—Plaintiffs (lessors) appeal from an adverse judgment in an action to reform a written lease agreement and to recover damages from defendant (lessee) for the breach of such agreement, as reformed. The record is confined to the clerk's transcript.

The sole issue on appeal is whether there were irregularities in the proceedings of the trial court by which plaintiffs were prevented from having a fair trial. (Code Civ. Proc., § 657, subd. 1.)

The specific irregularity claimed is that the trial judge not only formed an opinion as to the merits of the case before plaintiffs had completed the presentation of their evidence but that he also expressed this opinion to respective counsel and urged them to make a settlement.

The comments complained of were made at a conference in chambers, during a recess on the third day of a five-day non-jury trial. No reporter was present and we have no record of what was said except the conflicting statements of opposing counsel in their respective affidavits filed in connection with plaintiffs' motion for a new trial, which motion was denied.

The background is that plaintiffs owned certain real property which defendant was desirous of leasing for use as a gasoline service station. On July 24, 1956, the parties executed a lease agreement, clause 21 of which is as follows: ''Lessor agrees to cause to be constructed on the demised premises at Lessor's own expense and at no cost to Lessee, improvements, facilities and equipment adequate for the operation of a gasoline service station for the sale of gasoline and
not to exceed
other petroleum products at a cost of ~~approximately~~ Thirty Thousand Dollars ($30,000.00), all in strict accordance with plans and specifications to be approved in writing by Lessor and Lessee.''

Plans and specifications were never approved by the parties and construction was never commenced. Plaintiffs' contention is that prior to the execution of the written agreement, the parties had orally agreed upon the size and type of station to be constructed and that defendant, not plaintiffs, was required to construct it. The complaint seeks to reform the written agreement in these respects.

On the third day of trial, the judge called counsel into chambers and stated to them, in substance, that he did not feel that plaintiffs had made out a case thus far. As stated in the affidavit of defendant's counsel, the judge ''indicated that while *his mind was still open with respect to any decision* in this case, it was his impression and opinion after having heard two and a half days of testimony that it would appear that judgment in this case would probably be granted for the defendant *unless* other evidence introduced during the course of this trial would change this trend.'' (Italics ours.)

The judge obviously had in mind the rule that the reformation of a plain and unambiguous provision in a written agreement must be supported by clear and convincing evidence. (*Burt* v. *Los Angeles Olive Growers Assn.*, 175 Cal. 668, 675 [166 P. 993]; *Moore* v. *Vandermast, Inc.*, 19 Cal.2d 94, 96 [119 P.2d 129].) ■ The comment complained of was for the guidance of counsel on a point of law. Even where such comment is erroneous, it is not improper. (Cf. *Ryan* v. *Welte*, 87 Cal.App.2d 888, 895 [198 P.2d 351].)

■ Apparently in response to such comment, plaintiffs' counsel stated that he was calling as his next witness the attorney who had represented plaintiffs during the negotiations prior to the execution of the agreement; that this witness would testify that the true agreement was that the

defendant was to construct the station and that the provision in clause 21 to the contrary was not in conformance with said true (oral) agreement.

This undoubtedly came as a surprise to the judge, as he had before him the executed agreement on which there were no less than 11 changes, all initialed by the parties in the margin. It would appear that each change benefited plaintiffs and that someone acting for them must have gone over the agreement very carefully before they signed it. Even clause 21 was changed on its face to the benefit of plaintiffs, as we have indicated above.

Be this as it may, plaintiffs complain that the judge made the comment, "*in substance*," that "much time [over five years] had elapsed since the witness had been engaged in these negotiations, and that this witness was obviously mistaken." (Italics ours.) Plaintiffs' counsel does not purport to quote the words used by the judge. He simply gives his interpretation. We do not believe that the judge intended by his comment to mean that he had already made up his mind that he was going to disbelieve the lawyer-witness if he testified as trial counsel indicated he would. It was simply a comment designed to call attention to a matter which the witness should think about before starting to make assertions under oath.

Plaintiffs make no mention of the testimony actually given by this witness nor is any claim made that it was in any way inconsistent with the court's findings. Of interest is the following finding: "That the plaintiffs executed said lease, which had been previously prepared by both parties after extensive conferences in plaintiffs' counsel's office, including all riders and attachments thereto, *in the presence of their attorney*. . . ." No attack is made upon this finding.

It is reasonable to conclude that the witness, who was the "attorney" referred to in the finding, may have recalled that clause 21 did correctly state the understanding of the parties. Thus, he would have been "obviously mistaken" if he had testified to the contrary. We find no error in the court's comment.

*Settlement discussion.* During the same conference referred to above, the judge stated that he was interested in knowing whether a settlement could be made. A settlement discussion then ensued "between counsel rather than between the Court and plaintiff's attorney," according to the affidavit of defendant's attorney. It appears that the latter had made an offer of $2,000 in settlement sometime before the trial but

that, because of the expenses incurred in preparing for trial and in the trial itself, he was no longer in a position to do so. During the discussion the judge said he was thinking of some figure less than $1,000.

The judge also observed that the defendant had arranged a bank loan of $55,000 for the plaintiffs at a low rate of interest; that with $25,000 of this loan, they had been able to buy the property adjacent to their original holding; that the value of the entire holding had increased between the date of the loan and the date of the trial; that because of this he did not feel that plaintiffs had suffered any financial loss as the result of their dealings with the defendant.

This was no more than a comment which the judge felt might be considered in a settlement discussion. It merely represents an observation based upon *what had transpired up to that point in the case.* It did not indicate that he had closed his mind on the issue of damages or that he would not award damages *if the law and the evidence required him to do so.* As before stated, ''the trial judge indicated . . . his mind was still open with respect to any decision in this case, . . .''

■ The rule is well established that, within proper bounds, a trial judge should encourage the settlement of litigated cases. (*Rosenfield* v. *Vosper,* 45 Cal.App.2d 365, 371 [114 P.2d 29]; 48 Cal.Jur.2d, Trial, § 61, pp. 117-118.) The question here, of course, is whether the judge's comments were within such bounds.

■ Plaintiffs rely principally on the *Rosenfield* case, *supra,* claiming that the factual situation therein is closely analogous. That case involved an action for attorney's fees. The original prayer was for $5,605. It was amended successively to $10,000, $15,000, and, finally, $18,000. The defendants insisted throughout that the services were worth no more than $1,000.

During the trial, and *before defendants had presented any evidence,* the trial judge urged the defendants' counsel to settle for $7,500. Defendants' defense was that the parties had orally agreed that plaintiff's charges would not exceed $1,000 and that this amount was reasonable.

Thus, when the trial judge urged defendants to pay $7,500, he did so *without having heard a single witness for the defendants.* This obvious prejudice against defendants' defense was held to require a reversal of the judgment, which was based upon a finding that the services were of a reasonable value of $13,000. (*Rosenfield* v. *Vosper,* p. 367.)

On a retrial, plaintiff received a judgment for the exact amount contended for by defendants, $1,000. This judgment was affirmed on appeal. (*Rosenfield* v. *Vosper,* 86 Cal. App.2d 687 [195 P.2d 530].)

In the instant case, however, the remarks of the court were made *after* plaintiffs had been conducting their case for nearly three full days. The judge was obviously alert to the fact that they had not as yet established either their cause of action indicated in the complaint, or the element of damages.

It does not seem unusual that a judge would be wondering about plaintiffs' case, when three days of trial had not yet produced sufficient evidence to establish a prima facie case. A written lease was in evidence from the first day of trial, providing that improvements were to be constructed according to plans and specifications *which first had to be approved in writing* by both parties.

In order to overcome this provision of the lease, plaintiffs pleaded and proposed to prove that said provision was placed in the lease by mistake and was not the actual agreement of the parties. Plaintiffs therefore had had three days to prove the actual agreement of the parties and how it differed from clause 21 of the lease.

The court also indicated that his conclusion *so far* was that plaintiffs had *not yet* proved any damages either, assuming that they could establish the right to vary the terms of the written agreement. This was also in the nature of a tentative conclusion "in order that counsel may be advised what course to chart" (*Gary* v. *Avery* (1960) 178 Cal.App.2d 574, 579 [3 Cal.Rptr. 20]). Considering the court's frame of mind, in this more reasonable context of what occurred at the conference, his remark that he "was thinking of some figure less than a thousand dollars" as a settlement figure, becomes less significant. For clearly, if plaintiffs were not going to be able to prove *either* the right to modify the written agreement *or* damages as a result of the breach thereof, there would be no point in defendant offering a settlement of any substantial amount.

As stated by Mr. Justice Traynor, in *Weil* v. *Weil,* 37 Cal.2d 770, 786 [236 P.2d 159]: "Each of the cited cases in which trial judges have been found guilty of misconduct [citations] has differed substantially from the others; none of them can be a controlling precedent in a new situation in which new fact questions are presented. Differences in the nature of the

litigation, the particular comments or conduct of the trial judge, the scope and reliability of affidavits by parties and attorneys, and the state of the evidence and the trial make it essential that each case turn upon its own facts.'' One of the cases referred to in the opinion is *Rosenfield, supra* (45 Cal.App.2d 365), as to which the following comment is made: ''The opinion of the dissenting judge shows, furthermore, that even under those circumstances the court had difficulty in deciding whether or not the judge had acted improperly.''

In our opinion, the comments of the trial judge in the instant case were made without bias or prejudice toward either party. The comments were made in a desire to give counsel for the respective parties ''an expression of the conclusions of the trial judge up to the moment, in order that counsel may be advised what course to chart.'' (*Gary* v. *Avery, supra,* p. 579.)

We conclude that the record before us does not present a situation which calls for a holding that the trial judge was guilty of misconduct which requires the granting of a new trial.

The judgment is therefore affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.