Opinion
 

 STANIFORTH, J.
 

 Petitioner Pacific and Southwest Annual Conference of the United Methodist Church (Conference) seeks a writ of mandate (Code Civ. Proc., § 1085) commanding the respondent superior court to disqualify the Honorable Ross G. Tharp, judge of that court (Code Civ. Proc., § 170, subd. 5), from further hearing of any matter in the underlying action. Alternatively, the Conference requests a writ (Code Civ. Proc., § 1103) prohibiting Judge Tharp from hearing any matters in the underlying action. Judge Tharp is challenged for bias and prejudice shown against the Conference (Code Civ. Proc., § 170, subd. 5) in pretrial hearings.
 

 This court directed the respondent superior court and Frank T. Barr et al. (Real Party in Interest) to appear and show cause why Judge Tharp should not be prohibited from hearing further matters in the underlying action.
 

 Upon application by the Conference, we directed that all proceedings before Judge Tharp be stayed without prejudice to further proceedings before another judge. The superior court did not proceed before another judge, thereby necessitating further proceedings in this court.
 

 
 *76
 
 The Underlying Action
 

 The underlying action is a suit for $266 million damages brought by the Real Party in Interest against the Conference and others. The complaint asserts the Conference is responsible to carry out life care contracts entered into by eklerly persons with a retirement home system named Pacific Homes, an agent or alter ego of the Conference. Although the action is still in the pleading stage, a series of pretrial matters have been heard—three demurrers, one of which is still pending, a motion to quash, an ex parte application for temporary restraining order, and an order to show cause in re preliminary injunction, as well as a motion to quash service of process brought on behalf of defendants General Council of Finance and Administration of the United Methodist Church (GCFA) and the United Methodist Church (UMC).
 

 Judge Tharp, the assigned law and motion judge, heard and determined the motions to quash—adversely to GCFA, but favorably to UMC—and continued the hearing on Barr’s motion for preliminary injunction then pending before him. Judge Tharp also had pending before him Barr’s motion for discovery, a class certification motion and the remaining demurrer—as well as the continued motion for preliminary injunction.
 

 At this juncture in the pretrial matters, on March 20, 1978, Judge Tharp sent the following letter to all counsel. Because of the significance of each statement contained, we quote in its entirety:
 

 “Re: Frank T. Barr v. United Methodist Church, Superior Court No. 404611
 

 “To All Counsel of Record:
 

 “Enclosed please find my ruling on the motions to quash.
 

 “All parties hereto are urged to re-examine their respective positions with a view toward returning to the conference table. Since I will not try this case should it proceed to trial, I am taking the liberty of sharing with you my appraisal of your respective positions.
 

 “First, I believe the plaintiffs’ claims against the Pacific & Southwest Conference are meritorious and that they will in all probability prevail at
 
 *77
 
 time of trial. Likewise, I believe that plaintiffs will prevail against the GCFA on the alter ego theory in view of the GCFA’s complete domination and control of the Conference. Further, I believe the award of damages will be enormous.
 

 “On the other hand, so far as plaintiffs’ motion for preliminary relief is concerned, i.e., their prayer to require payment of some $300,000 per month, there is,
 
 at this time,
 
 insufficient evidence to establish an existing hardship on the plaintiffs. Of the one hundred and sixty (160) named plaintiffs, fewer than sixty (60) supplied the information requested of them by their counsel. In order for me to determine relative hardship, I must have competent evidence submitted, not merely an emotional appeal. The emotional strain that this tragedy has placed upon the litigants is not alone sufficient for me to order the injunctive relief prayed for.
 

 “Accordingly, enclosed herewith is a form which must be completed by each of the named plaintiffs before April 1, 1978. Upon receiving and reviewing said data, it may well be concluded that there is no
 
 immediate
 
 financial crisis on the part of the plaintiffs, and that they (or most of them) can afford to wait until trial for a redress of their grievances. At least one of the defendants is well able to respond in damages and the likelihood of the plaintiffs’ receiving a very sizable judgment within the next few months bears heavily in their favor.
 

 “The defendants, I believe, should consider offering some of their abundant means to help resolve this problem. The homes are now in the hands of a very competent person who has done a masterful job in stabilizing and containing the problem. If funds were made available to him—in the form of a loan or otherwise—he would be in a position to undertake an advertising and promotional program to fill the existing vacancies. It might be well to remember the old adage: ‘Charity begins at home.’
 

 “I have spoken with Mr. Matthews to determine his availability to meet with you gentlemen at the conference table, and he is ready, willing and able to do so. Since ‘The United Methodist Church’ is ‘out of the case’, perhaps Mr. Witwer would be willing to assume a position of
 
 *78
 
 leadership in bringing the litigants together to confer once more. Continued litigation may prove devastating to all concerned.
 

 Very truly yours,
 

 Ross G. Tharp”
 

 The Conference responded by filing an objection (Code Civ. Proc., § 170, subd. 5) to Judge Tharp’s hearing any further matter. Judge Tharp answered the objection declaring that he had “evaluated the parties’ relative positions” and “believe there is a strong possibility that plaintiffs will prevail.” He also stated, “I am not prejudiced against any party to this litigation.”
 

 The Conference by concurrent motion sought to transfer the underlying action for pretrial matters as well as trial to a single judge. Their motion contained three named judges, agreeable to all parties, to whom the action might be transferred. The Presiding Judge (Orfield) denied both the Code of Civil Procedure section 170, subdivision 5 objection to Judge Tharp and the motion to transfer to a single judge. These writ proceedings followed.
 

 Propriety of Use of Writ of Mandate
 

 Petitioners contend that Judge Orfield’s denial of their objection to Judge Tharp is a prejudicial abuse of discretion authorizing relief by perogative writ. The petition for writ makes the appropriate allegations concerning the lack of adequate remedy at law and further asserts that unless Judge Tharp is restrained, he will proceed without or in excess of jurisdiction to hear and determine matters in the underlying action from which he is by law disqualified.
 

 The propriety of, the conditions surrounding, the use of the writ of mandate to review a lower court order was fully considered by this court in
 
 Hogya
 
 v.
 
 Superior Court,
 
 75 Cal.App.3d 122 [142 Cal.Rptr. 325]. We extract therefrom these essential rules:
 

 “ ‘[A] writ [of mandate] will lie when there is no plain, speedy, and adequate alternative remedy; the respondent has a duty to perform; and the petitioner has a clear and beneficial right to performance. [Citations.]’
 

 
 *79
 
 “It is the petitioner’s burden to establish the inadequacy of other relief. [Citations.]”
 
 (Id.
 
 at p. 128.)
 

 Further, it is agreed as to most interim orders, “ ‘the parties must be relegated to a review of the order on appeal from the final judgment.’ [Citations.]”
 
 (Id.
 
 at p. 129.)
 

 Judge Orfield’s order here under review is not directly appealable. (Code Civ. Proc., § 904.1.) Nor do we find, based on the particular facts (see
 
 Rescue Army
 
 v.
 
 Municipal Court,
 
 28 Cal.2d 460, 466 [171 P.2d 8]) that appeal from final judgment is an adequate remedy. If due to jural bias or prejudice, real parties in interest are in fact granted preliminary relief and/or class certification, petitioners may be forced to present a long and expensive defense to a suit which might not have continued had preliminary relief and class certification not been granted. Petitioners should not be required to proceed to trial without the benefits afforded by an impartial, unbiased judge hearing entire pretrial matters.
 

 The issue of jural bias, if left unresolved, may infect the entire subsequent proceedings with fatal error. This issue must be promptly resolved. The burden, expense and delay involved in a trial of the magnitude and complexity in prospect render an appeal from an eventual judgment an inadequate remedy.
 

 Respondent superior court contends the Conference has an adequate remedy at law—a “peremptory” challenge of Judge Tharp pursuant to Code of Civil Procedure section 170.6—and for that reason relief by extraordinary writ should be denied. The argument lacks merit.
 

 First, a section 170.6 motion is not available to petitioner. As to the preliminary injunction proceedings, such a motion would clearly be untimely. “If the motion is directed to a hearing (other than the trial of a cause), the motion must be made not later than the commencement of the hearing.” (Code Civ. Proc., § 170.6.) The hearing on the preliminary injunction, though not concluded, has commenced.
 

 Furthermore, peremptory disqualification of Judge Tharp on other pretrial motions is precluded by his participation in the preliminary injunction hearing. Section 170.6 provides “[t]he fact that a judge . . . has presided at or acted in connection with a pretrial conference or other hearing, proceeding or motion prior to trial and
 
 not involving a
 
 
 *80
 

 determination of contested fact issues relating to the merits
 
 shall not preclude the later making of the motion ....” (Italics added.) By negative implication, if a judge presides at or acts in connection with a pretrial motion involving a determination of contested fact issues relating to the merits, a later making of a section 170.6 motion is precluded. The hearing on the motion for preliminary injunction, involving as it does an assessment of the likelihood that plaintiffs would prevail at trial (see, e.g.,
 
 Continental Baking Co.
 
 v.
 
 Katz,
 
 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889]), requires a determination of such issues and thus precludes a later section 170.6 motion. In short, the remedy at law suggested by respondent court is simply not available.
 

 Even if it were, policy and sound reason dictate against requiring that a party exhaust the right to disqualify a judge peremptorily (Code Civ. Proc., § 170.6) before seeking vindication of the right to disqualify a judge for cause (Code Civ. Proc., § 170). Such rights are not fungible. Subdivision (7) of section 170.6 expressly provides “[njothing in this section shall
 
 affect or limit
 
 the provisions of Section 170 .. . and this section shall be construed as cumulative thereto.” (Italics added.) Section 170.6 provides for disqualification of a judge without factual proof of prejudice. As such, it provides an “ace in the hole,” a means to disqualify a judge without the showing required by section 170, subdivision 5. Its purpose would be undercut by now requiring petitioner to exhaust, in reality forfeit, that separate and distinct right before seeking vindication of the right to disqualify a demonstrably biased judge. Such a remedy, which protects one right only at the sacrifice of another, is not adequate.
 

 Finally, we believe our issuance of an order to show cause determined the absence of another adequate remedy. Certainly, issuance of an alternative writ has that effect,
 
 [1]
 
 and the Supreme Court, over dissent, has declined to distinguish the effect of an order to show cause from that of an alternative writ in this regard
 
 (Hagan
 
 v.
 
 Superior Court,
 
 53 Cal.2d 498, 501-502, fn. 1 [2 Cal.Rptr. 288, 348 P.2d 896]; but see
 
 id.,
 
 pp. 509-511 [Schauer, J., dis.]; see also Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 4.25, 5.42). It is thus incumbent upon respondents and real parties in interest to raise the adequacy of other remedies by filing points and authorities in
 
 *81
 
 opposition to the petition (Cal. Rules of Court, rule 56(b)) before an alternative writ or order to show cause issues, rather than by return.
 

 Our conclusion that there is no plain, speedy adequate remedy at law does not force mandate as the appropriate remedy here. We must first consider whether the law “specially enjoins” respondent court to sustain the Conference’s Code of Civil Procedure section 170, subdivision 5 objection to Judge Tharp.
 

 While mandamus will not lie to control the exercise of discretion, the writ is available to correct abuse of discretion. (Baldwin-
 
 Lima-Hamilton Corp.
 
 v.
 
 Superior Court,
 
 208 Cal.App.2d 803, 823 [25 Cal.Rptr. 798], and cases cited.)
 

 Moreover, “It is well settled that
 
 mandamus
 
 will not lie to control the discretion of a court or judicial officer or to compel its exercise in a particular manner, except in those rare instances when under the facts it can be legally exercised in but one way.”
 
 (Hilmer
 
 v.
 
 Superior Court, 220
 
 Cal. 71, 73 [29 P.2d 175].)
 

 This latter rule applies where the facts are undisputed and the lower court has arrived at an incorrect conclusion of law based thereon or has disregarded a duty expressly enjoined by the law under the undisputed facts. Only in such fact setting may the judicial officer be compelled by writ of mandate to act in a particular manner.
 
 (Matter of Ford,
 
 160 Cal. 334, 347 [116 P. 757].) In
 
 State Farm etc. Ins. Co.
 
 v.
 
 Superior Court,
 
 47 Cal.2d 428 [304 P.2d 13] (quoting with approval from
 
 Berry
 
 v.
 
 Chaplin,
 
 74 Cal.App.2d 669, 672 [169 P.2d 442]), we find this further enlightenment: “ ‘In a legal sense, discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered.’ ” (P. 432.)
 

 With this brief traverse of the prerequisites to issuance of the writ, we examine the specific grounds asserted.
 

 The facts are without conflict. Judge Tharp wrote the letter of March 20 at a time when he had pending before him these unresolved matters—a motion for preliminary injunction, a class certification question and a demurrer. The precise issue in the framework of conceded facts is whether
 
 as a matter of law
 
 respondent court was required to sustain the Conference’s Code of Civil Procedure section 170, subdivision
 
 *82
 
 5 objection to Judge Tharp.
 
 (Briggs
 
 v.
 
 Superior Court,
 
 215 Cal. 336, 342-345 [10 P.2d 1003].)
 

 California Code of Civil Procedure section 170, subdivision 5 reads in pertinent part: “No justice or judge shall sit or act as such in any action or proceeding: When it is made to appear probable that, by reason of bias or prejudice of such justice or judge a fair and impartial trial cannot be had before him.”
 

 Disqualification is required by this section when it appears “probable” by reason of evidence of bias or prejudice a “fair and impartial trial” cannot be had before the challenged judge; or in the context of this proceeding, whether it is probable the Conference cannot obtain a fair and impartial hearing before Judge Tharp on the continued hearing of the preliminary injunction matter and the other pretrial matters requiring resolution of disputed factual issues by him.
 

 The respondent court contends “. . . even if Judge Tharp’s letter of March 20 could be viewed as demonstrating an adverse opinion to Conference on this issue, it cannot form the basis for a finding of bias or prejudice since the letter was based on what had occurred before Judge Tharp in the course of the underlying litigation.”
 

 It is argued Judge Tharp’s statements were in discharge of his official duties; therefore his views expressed are not evidence of bias or prejudice and cannot be the basis for disqualification.
 
 (Kreling
 
 v.
 
 Superior Court,
 
 25 Cal.2d 305, 312 [153 P.2d 734].)
 

 Respondent court asserts Judge Tharp’s written statement, “I believe the plaintiffs’ claims against the Pacific & Southwest Conference are meritorious and that they will in all probability prevail at time of trial” was in fact a performance of the judge’s duty to determine one of the issues in the pending injunction proceedings: to wit, whether “there is a reasonable probability that plaintiffs will be successful in the assertion of his rights”
 
 (Continental Baking Co.
 
 v.
 
 Katz,
 
 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889]), or would prevail on the merits
 
 (People
 
 v.
 
 Pacific Land Research Co.,
 
 20 Cal.3d 10, 21 [141 Cal.Rptr. 20, 569 P.2d 125].)
 

 In
 
 Kreling
 
 v.
 
 Superior Court,
 
 25 Cal.2d 305, 312 [153 P.2d 734], the Supreme Court stated: “[W]hen the state of mind of the trial judge
 
 *83
 
 appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him in the trial of the action. It is his duty to consider and pass upon the evidence produced before him, and when the evidence is in conflict, to resolve that conflict in favor of the party whose evidence outweighs that of the opposing party. The opinion thus formed,
 
 being the result of a judicial hearing,
 
 does not amount to that bias and prejudice contemplated by section 170, subdivision 5, of the Code of Civil Procedure.. ..” (Italics added.)
 

 In
 
 Kreling,
 
 trial judge Stanley Mosk expressed the challenged opinion only after he had heard all of the evidence in a particular case and the parties had rested. The challenge made was to Judge Mosk’s hearing three additional cases set before him but to trail and be tried at the conclusion of the first case. The evidence received on the first trial was to be received and considered in the remaining trials. Kreling did not claim that the evidence received in the first case was not competent and relevant or inadmissible in the three cases later to be tried; nor did he claim he had any further evidence on any issue that would change the result reached by Judge Mosk in the first case. Clearly the opinion formed by Judge Mosk was the result of a full hearing of evidence and at a time when he had a legal duty to rule upon the matter submitted. Neither the facts nor the rule announced in
 
 Kreling
 
 purge Judge Tharp’s remarks.
 

 Unlike Judge Tharp’s views, the opinion of the judge in
 
 Kreling
 
 was “the result of a judicial hearing.” It was given only after “actual observance of the witnesses and the evidence given during the trial____”
 

 Nor does
 
 People
 
 v.
 
 Yeager,
 
 55 Cal.2d 374, 391 [10 Cal.Rptr. 829, 359 P.2d 261], give judicial sanctions to the remarks here made. In
 
 Yeager,
 
 the findings by the judge that a minor was not a fit and proper subject for consideration under juvenile court law was not a finding on the ultimate issue of guilt or innocence. Rather the juvenile court judge, after hearing the evidence on the issue before him, was required—had a legal duty—to make a determination based upon the facts before him at the time. The
 
 Yeager
 
 facts typify one of a host of preliminary decisions that must be made in the course of any trial. A motion in such factual posture is not evidence of bias or prejudice under Code of Civil Procedure section 170, subdivision 5.
 

 
 *84
 
 And in
 
 Haldane
 
 v.
 
 Haldane,
 
 232 Cal.App.2d 393, 395 [42 Cal.Rptr. 828], the appellate court succinctly states the rule: “ ‘A judge may not properly tiy a case where he has formed partisan opinions from outside sources, but a trial judge will normally and properly form opinions on the law, the evidence and the witnesses, from the presentation of the case. These opinions and expressions thereof may be critical or disparaging to one party’s position, but they are reached after a hearing in the performance of the judicial duty to decide the case, and do not constitute a ground for disqualification.’ ”
 

 Where a judge gratuitously offers an opinion on a matter not yet pending before him and thereby shows a bias or prejudice against a party, a writ of mandate will issue precluding the opining judge from hearing that matter.
 
 (Calhoun
 
 v.
 
 Superior Court,
 
 51 Cal.2d 257, 261 [331 P.2d 648].)
 

 Upon juxtaposition of the uncontradicted facts with the foregoing rules of law, we find Judge Tharp’s letter, on its face, rebuts any suggestion he was addressing his remarks regarding the Conference’s ultimate liability to an issue involved in the pending motion for preliminary injunction. His view of real party’s ultimate success on the issues of liability and damages against the Conference and GCFA are expressed in the third paragraph of the letter. It is not until the fourth paragraph where the judge first refers to the pending preliminary injunction application. He there addresses it as an entirely distinct and separate subject.
 
 “On the other hand,
 
 so far as plaintiffs’ motion for preliminary relief is concerned....” (Italics added.)
 

 In the context found and from the words used, no other conclusion follows but that Judge Tharp’s opinion treated with a matter not before him, to wit: the Conference and GCFA liability and the extent thereof on trial.
 

 Furthermore, Judge Tharp was but midprocess in the preliminary injunction matter. The evidence-taking aspect of that hearing had not ended. Neither party had submitted the matter for decision. Thus this midstream gratuitous blast was not of the genre of interim decisions a trial court must make based upon the evidence then received on a preliminary question requiring answer before the trial can proceed.
 

 
 *85
 
 Adding to the high degree of probability that Judge Tharp was not addressing his remarks to an issue before him in discharge of a legal duty is this significant fact: Judge Tharp’s opinion as to ultimate responsibility encompasses not only the Conference but a party not before the court on the preliminary injunction matter—GCFA. GCFA had entered a special appearance only, to contest jurisdiction, by its motion to quash service of summons. It was the ruling on GCFA’s motion that accompanied Judge Tharp’s March 20 letter. GCFA has not conceded jurisdiction but rather has since petitioned this court for writ of mandate challenging Judge Tharp’s ruling. GCFA could not—without waiving its jurisdictional challenge—participate in the motion for preliminary injunction in any way. If Judge Tharp was expressing only an opinion required of him on a matter then pending before him, it seems utterly incongruous that he would have mentioned GCFA within the broad sweep of his opinions on liability and extent thereof on trial.
 

 If it be assumed that embedded within Judge Tharp’s expression as to ultimate liability and extent thereof is a view concerning the ruling be made on the preliminary injunction motion, then Judge Tharp has prejudged the matter before him. Before completion of the evidence-taking process, before argument he has decided one
 
 of
 
 the issues necessarily involved in granting or not granting a preliminary injunction.
 

 Further, Judge Tharp wrote in his missive, “Enclosed herewith is a form which must be completed by each of the named plaintiffs before April 1, 1978.” By this language Judge Tharp departed from his role of impartial arbiter and injected himself into the case as an advocate. He proposed without notice to counsel, a form of financial questionnaire intended to provide information to him upon which he would decide the question of irreparable harm, an issue before him in the preliminary injunction matter. The form attached and the language used by the judge leads unerringly to that conclusion.
 

 Further, Judge Tharp in saying: “The defendants, I believe, should consider offering some of their abundant means to help resolve this problem,” and “I have spoken with Mr. Matthews to determine his availability to meet with you gentlemen at the conference table . . . and “Continued litigation may prove devastating to all concerned,” is not ruling upon a matter before him. Rather the vice of such statements is that instead of maintaining his function as a judge he again becomes an advocate in the case. Certainly his objectivity if not already gone, is the
 
 *86
 
 next casualty. These statements viewed in to to indicate a prejudgment of the entire case, not just the specific matters yet unresolved before him. Repeated admonitions to “settle the case” settlement will be in the best interest of the client indicate that the judge may have become prejudiced in the case.
 
 (Rosenfield
 
 v.
 
 Vosper,
 
 45 Cal.App.2d 365, 372 [114 P.2d 29].) While a court may, after receipt of evidence, give counsel an expression of its conclusions up to that moment in order that counsel may be advised of what course to chart
 
 (Gardner
 
 v.
 
 Mobil Oil Company,
 
 217 Cal.App.2d 220, 226 [31 Cal.Rptr. 731, 6 A.L.R.3d 1451]), and to that extent encourage settlement discussions, factually that is not this case. Judge Tharp was midstream in pretrial matters. The use of the quoted language at this point in time is highly indicative that Judge Tharp has adopted a “mental attitude or disposition” for or against a party to the action. The horses were not yet out of the paddock yet the winner was chosen.
 

 Finally, Judge Tharp’s public expression of opinion as to not only the liability of the Conference to the real parties but that the damages to be awarded would be “enormous” presumes a class action will be certified. This arguably constitutes a prejudgment of one of the motions then pending before the court and upon which the Conference has had no opportunity to respond or comment.
 

 We address this key question: Has Judge Tharp, as shown by the uncontradicted evidence of publicly announced prejudgments of issues before him as well as issues and parties not before him, by unchallenged evidence of the interjection of his views and directives indicating his adoption of an advocate’s pose, demonstrated bias or prejudice against a party to the requisite degree of probability under Code of Civil Procedure section 170, subdivision 5?
 

 Bias is defined as a mental predeliction or prejudice; a leaning of the mind; “a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction.” (Black’s Law Diet., p. 205.) Bias or prejudice consists of a “mental attitude or disposition of the judge towards a party to the litigation, . . .”
 
 (Evans
 
 v.
 
 Superior Court,
 
 107 Cal.App. 372, 380 [290 P. 662].) In order for the judge to be disqualified under Code of Civil Procedure section 170, subdivision 5, the prejudice must be against a particular party.
 
 (Evans
 
 v.
 
 Superior Court, supra; People
 
 v.
 
 Sweet,
 
 19 Cal.App.2d 392, 396 [65 P.2d 899].)
 

 
 *87
 
 In defining bias,
 
 Adoption of Richardson,
 
 251 Cal.App.2d 222 [59 Cal.Rptr. 323] illustrates the concept: “Bias equates here with partiality. Here the judge had a fixed opinion of the unfitness of petitioners solely because they were deaf-mutes. He was under some influence which so swayed his mind in one direction as to prevent his deciding the case according to the evidence. This leaning or inclination against all deaf-mutes without regard to their character, abilities and demonstrated fine qualities is inconsistent with a state of mind fully open to conviction which the evidence might produce. One whose opinion is preconceived and expressed in writing with reference to particular persons or situations is obviously inclined to that view, and considerable evidence would ordinarily be necessary before those positively expressed impressions could be removed and his mind restored to the straight line of impartiality.”
 
 (Id.
 
 at pp. 232.)
 

 Adoption of Richardson, supra,
 
 also defines the term prejudice in the Code of Civil Procedure section 170, subdivision 5 context in this manner: “Prejudice imports the formation of a fixed anticipatory judgment as contradistinguished from those opinions which may yield to substantial evidence. It includes the forming of an opinion without due knowledge or examination, although it does not necessarily indicate any ill feeling.”
 

 The
 
 Adoption of Richardson, supra,
 
 further observed: “ ‘ “The bias or prejudice which may disqualify a judge must be of a character calculated to seriously impair his partiality [¿7'c] and sway his judgment.” ’ ”
 

 We cannot see into the mind or heart of Judge Tharp. However, the objective evidence demonstrates—to a high degree of probability—Judge Tharp has a “leaning of the mind,” “a predisposition to decide the . . . issue” with a mind state not “perfectly open to conviction.” He has formed a “fixed anticipatory judgment.” He has prejudged the outcome of the preliminary cause before him as well as the trial not before him.
 

 To any member of the discerning public, it would reasonably appear Judge Tharp had prejudged without fact and without hearing the ultimate outcome of an enormous and complex case. He appears to have prejudged the outcome of the specific pretrial matter before him long before any judge is authorized to “tote up” or to commence his conclusionary thinking. In so doing, he has broken a prime ground rule of the judge’s craft. “The trial of a case should not only be fair in fact, but it
 
 *88
 
 should also appear to be fair. And where the contrary appears, it shocks the judicial instinct to allow the judgment to stand.”
 
 (Pratt
 
 v.
 
 Pratt,
 
 141 Cal. 247, 252 [74 P. 742];
 
 Wood
 
 v.
 
 City Civil Service Commission,
 
 45 Cal.App.3d 105, 110 [119 Cal.Rptr. 175].)
 

 The Supreme Court in
 
 Solberg
 
 v.
 
 Superior Court,
 
 19 Cal.3d 182, at page 193, footnote 10 [137 Cal.Rptr. 460, 561 P.2d 1148], spoke to the heart of the matter: “ Tt is often stated that it is not only the
 
 fact
 
 but the
 
 appearance
 
 of prejudice that should disqualify a judge. This is a rule that appeals to the reason of the Constitution. . . . [I]t is not the fact of prejudice that would impair the legitimacy of the judiciary’s role but rather the
 
 probable
 
 fact of prejudice,
 
 i.e.,
 
 the appearance of prejudice. The truth of few, if any, ultimate “facts” of human existence are established to that point of complete certitude which eliminates all plausible doubt. A fact as difficult of ascertainment as any person’s “prejudice” is seldom, if ever, proven so completely that reasonable persons might not still disagree. And the mere allegation or good faith belief that a fact is true may be sufficient to cause reasonable doubt. Since the legitimacy of the Court’s role is essentially a perception of the people, in whose secure confidence the courts must remain if their powers are to be maintained, it follows that merely probable or even alleged facts or a good faith belief in such facts may be sufficient to disqualify a judge.’ ”
 

 We can but say Amen.
 

 We conclude Judge Orfield’s denial of the Conference’s Code of Civil Procedure section 170, subdivision 5, objection to Judge Tharp was an abuse of discretion. Under that statute the bias and prejudice so demonstrated disqualifies Judge Tharp from further hearing, further ruling on any matter related to the underlying action. Further the bias taints, the disqualification extends, not only to matters in prospect but also to the entire proceeding—the preliminary injunction—then in process before Judge Tharp.
 

 In conformity with the views here expressed, let the writ of mandate issue.
 

 Brown (Gerald), P. J., and Cologne, J., concurred.
 

 [1]
 

 See, e.g.,
 
 Blue Chip Stamps
 
 v.
 
 Superior Court,
 
 18 Cal.3d 381, 387, footnote 4 [134 Cal.Rptr. 393, 556 P.2d 755];
 
 Brown
 
 v.
 
 Superior Court,
 
 5 Cal.3d 509, 515 [96 Cal.Rptr. 584, 487 P.2d 1224];
 
 County of Sacramento
 
 v.
 
 Hickman,
 
 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593];
 
 Erlich
 
 v.
 
 Superior Court,
 
 63 Cal.2d 551, 557 [47 Cal.Rptr. 473, 407 P.2d 649];
 
 Corona etc. Hosp. Dist.
 
 v.
 
 Superior Court,.
 
 61 Cal.2d 846, 850 [40 Cal.Rptr. 745, 395 P.2d 817].