Filed 11/29/21  Sarah R. v. Gurley CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SARAH R.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADAM GURLEY,<br><br>    Defendant and Appellant. | A160772<br><br>(San Francisco City & County<br>Super. Ct. No. CCH-20-582802) |

Adam Gurley appeals from a civil harassment restraining order (Code Civ. Proc., § 527.6) entered against him.[1]  He challenges the sufficiency of the evidence supporting the order, contends the trial court violated his due process rights, and argues the statute violates his constitutional rights to free speech and to bear arms.  We disagree and affirm.

### BACKGROUND

### A.

In May 2020, Sarah R. filed a request for a civil harassment restraining order against Gurley.  In support of her request, which she filed in propria persona, she stated Gurley was her former attorney, as well as a family acquaintance, and

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

that he had been harassing her since April—when she expressed her dissatisfaction with his handling of her case. The court issued a temporary restraining order.

At a hearing approximately two months later, the trial court considered the following evidence:

In June 2019, Sarah retained Gurley to represent her in child custody and support proceedings. One evening in April of the following year, Sarah called Gurley after receiving an incoherent text message from him. Gurley sounded intoxicated and told Sarah that he had been kicked out of his house—because someone attacked him with a baseball bat—and then removed from three different hotels by police. Gurley expressed paranoid thoughts about "people coming after him" and told Sarah that he was now "associated" with the Hell's Angels motorcycle gang. He said "very threatening and nasty people" would collect his debts. Gurley also told Sarah that "there are lots of people getting out of jail from COVID . . . and the streets aren't safe" and that "he's going to find somebody to come to [her] house and collect [the money she owed him in unpaid attorney fees]." Sarah was traumatized and feared for her physical safety after the call.

Gurley also began texting and emailing her in the middle of the night, demanding that Sarah pay him between $3,000 and $28,000 in cash to settle a dispute over fees.

On the day the temporary restraining order issued, Gurley emailed Sarah, accusing her of sending an unidentified person in a black mask to his door. He told her, "give me the name of the thug who trespassed today, and I'll send an off-duty police officer[, with a badge and a gun,] to go talk to him and mend his ways."[2]

_____

[2] Sarah presented copies of this email (and others) at the hearing. However, the emails themselves are not in the appellate record. We presume that the content of the emails is consistent

2

Sarah's twin sister overheard the phone conversation between Sarah and Gurley. She testified Gurley was loud, agitated, and incoherent. Initially, she testified that Sarah was very upset by the call but that Gurley said nothing expressly threatening. But when the trial judge asked Sarah's twin if she remembered anything being said about the Hell's Angels, she remembered Gurley saying that he knows members.

Anthony M. worked for Gurley in the spring of 2020. He testified that Gurley was acting abnormally during that period. Gurley complained that "[e]verybody [was] plotting against [him]" and that he did not feel safe at home because someone attacked him while he was urinating in the bushes.

**B.**

Gurley was represented by counsel at the hearing. He denied threatening Sarah and said he only contacted her to try to settle the debt—$26,000 in legal fees—she owes him.

Gurley expressed skepticism that Sarah legitimately feared him after the April phone call. He testified that she initiated contact with him after the call and offered to personally bring him a meal. However, he admitted having a client who was a member of the Hell's Angels.

Gurley suggested there was no longer any danger he would continue to contact Sarah because, shortly after she filed her request for a restraining order, he filed suit to recover his unpaid fees. Sarah was independently represented in that action. However, Gurley admitted he incorrectly assumed she had

with the trial court's recitation. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [judgment challenged on appeal is presumed to be correct and appellant bears burden to affirmatively demonstrate error].)

3

something to do with sending a masked person to his house and admitted that he sent the "mend his ways" email.

## C.

At the conclusion of the hearing, the trial court issued a three-year restraining order against Gurley. The order prohibits Gurley from contacting Sarah or her twin sister "either directly or indirectly, in **any** way" and includes a stay-away order—requiring Gurley to stay at least 50 yards away from each of them and from their shared home.

The trial court found, "[Sarah] presented clear and convincing evidence that [Gurley] made credible threats of violence against her and that he engaged in a course of conduct intended to harass." It expressly found that Sarah was credible and that her version of events was corroborated by her supporting witnesses and the emails. It explained: "[W]hat is most convincing to the Court is the e-mail that [Gurley admitted sending] to [Sarah]. . . . I think that that is very much a threat. It's an implicit threat, and it's a very violent one to send a police officer who's armed, you said, and out of uniform to show somebody . . . how to serve process is very, very threatening."

## DISCUSSION

## A.

Gurley argues the restraining order is not supported by substantial evidence. We disagree.

## 1.

Section 527.6 authorizes a person who has suffered harassment to seek a temporary restraining order and an injunction after hearing. (§ 527.6, subd. (a)(1); *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 729–730.) " 'Harassment' " is defined by the statute as "unlawful violence, *a credible threat of violence, or* a knowing and willful

4

course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3), italics added.)

At the hearing, the judge receives relevant testimony and "may make an independent inquiry." (§ 527.6, subd. (i).) "If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (*Ibid.*)

We review the trial court's issuance of a restraining order after hearing for abuse of discretion, and we review the underlying factual findings for substantial evidence. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.) "[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

**2.**

Gurley claims Sarah presented no clear and convincing evidence to justify the order. He supports his argument with a self-serving factual recitation, which omits much of Sarah's evidence. As the appellant, Gurley bears the burden of demonstrating the insufficiency of the evidence. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1072.) By failing to summarize *all* the material evidence—not merely that favorable to him—and by failing to explain why the favorable evidence is insufficient, Gurley forfeits his substantial evidence challenge. (*Ibid.*; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

Nonetheless, having conducted our own review of the record, we also address the merits.

5

## 3.

A " '[c]redible threat of violence' " is defined as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).)

Sarah testified that, during the April phone call, Gurley said he would send a Hell's Angel or some other "very threatening and nasty" person to Sarah's home to collect his debt. Sarah's twin sister also testified that, during the call, Gurley mentioned knowing members of the Hell's Angels. Both Sarah and her sister testified that Gurley's comments caused Sarah to fear for her physical safety. The trial court could conclude Sarah's response was reasonable, especially in view of the other evidence that Gurley was acting bizarrely around the time he threatened her. Although Gurley may have had a legitimate purpose for communicating with Sarah generally—to discuss her family law case or to attempt to settle their fees dispute— threatening her with physical violence had no legitimate purpose.

Sarah's twin's testimony may be ambiguous as to whether Gurley *explicitly* threatened to send a Hell's Angel to Sarah's home. And there is evidence contradicting Sarah's expression of fear—she offered to personally bring Gurley dinner after the April phone call. However, even on a conflicting record, it is not our role to reweigh the evidence or to second guess the trial court's decision to credit Sarah's version of events over Gurley's. (See *Conservatorship of O.B., supra,* 9 Cal.5th at p. 1008.)

Substantial evidence supports the trial court's finding that it was highly probable Sarah suffered harassment, as defined by section 527.6, subdivisions (b)(2)-(3). (See *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497-498.) We need not consider Gurley's additional arguments on this point. (See *id.* at p. 502

6

[trial court need not find harassment based on more than one of the circumstances described by § 527.6, subd. (b)(3)].)

<h2 style="text-align:center">4.</h2>

Gurley also asserts a single incident of harassment is insufficient to support the trial court's order.

An injunction restraining future conduct is authorized only when it appears reasonably certain that the harassment is likely to recur. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 189 (*R.D.*); accord, *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 402.) "[T]he determination of whether it is reasonably probable an unlawful act will be repeated in the future rests upon the nature of the unlawful violent act evaluated in the light of the relevant surrounding circumstances of its commission and whether precipitating circumstances continue to exist so as to establish the likelihood of future harm." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 335, fn. 9.)

The cases Gurley relies on are distinguishable. (See *Russell v. Douvan, supra,* 112 Cal.App.4th at pp. 402-404 [reversing injunction based on a lawyer's single incident of battery against opposing counsel; involved representation had ended and attorneys otherwise unlikely to have contact]; *Scripps Health v. Marin, supra,* 72 Cal.App.4th at p. 336 [reversing § 527.8 order entered against a patient's son who had, on a single occasion, struck a hospital administrator; patient was no longer receiving care at hospital].)

Here, Gurley was no longer representing Sarah by the time of the hearing and argued there was no risk he would continue to contact her—other than through her attorney of record. But the trial court was not compelled to believe him. Gurley and Sarah had been friends or acquaintances before their professional relationship began. There is no evidence in the record suggesting their fees dispute had been resolved by the time of the hearing.

Sarah also filed a complaint against Gurley with the State Bar, another potential source of ongoing conflict.

Furthermore, the record includes more than just a single incident of harassment. In addition to the threatening phone call, Gurley repeatedly emailed Sarah in the middle of the night. Most importantly, on the day the temporary restraining order issued, Gurley emailed Sarah and wrongly accused *her* of sending an unidentified "thug" who trespassed at Gurley's house and "terroriz[ed]" Gurley's wife, and Gurley said he would send an off-duty police officer "with a . . . gun" to "mend his ways." The email was directed *to* Sarah—not to anyone else—and would reasonably place her in fear for her safety, particularly given the other evidence of Gurley's animosity and unstable behavior. Thus, on this record, the trial court could conclude that, after the April phone call, it was highly probable that Gurley persisted in implicitly threatening Sarah with violence.

Gurley insists that this most recent email cannot constitute an implicit threat *to Sarah.* We disagree. But even if we assume he is right, the trial court could nonetheless reasonably infer that Gurley's most recent conduct demonstrates his ongoing erratic behavior, his willingness to contact her even after their professional relationship had ended, his hostility toward her, and that, absent an injunction, there was a high probability Gurley would continue harassing Sarah. (See *Harris v. Stampolis, supra,* 248 Cal.App.4th at pp. 500-501 [" 'court could consider any evidence showing a likelihood of future harassment, including evidence of conduct that might not itself constitute harassment' "].)

We reject Gurley's frivolous argument that there is no good cause for extending the order's protection to Sarah's sister. (See § 527.6, subd. (c).) The two are identical twins and live together.

8

Substantial evidence supports the trial court's findings, and the issuance of the restraining order was not an abuse of discretion.

## B.

We also reject Gurley's argument that the trial court violated his right to due process.

## 1.

"The essence of due process is notice and the opportunity to be heard." (*Andre v. Superior Court* (1991) 2 Cal.App.4th 11, 19; accord, *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314.) Due process is violated when a party is not "afforded the right to present his arguments against the proposed ruling." (*Andre, supra*, at p. 19.) Due process also entitles a litigant to an impartial decision maker. (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1025.)

## 2.

The record refutes any assertion that the trial court deprived Gurley of an opportunity to be heard. Gurley filed a written response before the hearing, which the trial court considered. At the hearing, Gurley himself testified, his counsel presented argument and cross-examined Sarah's twin sister and Anthony M., and the trial court repeatedly invited Gurley to present additional evidence.

Gurley cannot argue on appeal that he was denied the opportunity to cross-examine Sarah because he never asked to do so. Nor did he press any due process objection below. He thereby forfeited his argument on appeal. (See *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [constitutional issues not raised in trial court are generally forfeited]; *In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1129-1130 & fn. 4, 1132 [rejecting due process

challenge when appellant failed to object and never asked to cross-examine opposing party].)

Contrary to his assertion, Gurley had notice that an order, including a stay away order, might issue after the hearing. Sarah did not check the box indicating she requested a stay away order in her petition. However, the temporary restraining order, which was served on Gurley before the hearing (§ 527.6, subd. (m)), included a provision requiring Gurley to stay at least 50 yards away from Sarah and her home. Gurley did not challenge this aspect of the order in any way at the hearing.

**3.**

We also reject Gurley's claim that the trial court prejudged the case.

A trial judge should not prejudge a case but should keep an open mind until all the evidence is heard. (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291.) Gurley relies on the trial judge's statements immediately before Sarah's twin and Anthony M. testified. Before the two corroborating witnesses testified, the following exchange occurred:

"[GURLEY'S COUNSEL]: I object to both potential witnesses. . . . There[] [are] two problems with them, specifically: One, the sister. . . . Gurley had no idea someone [else] was on that call. It's very problematic.

"With Anthony [M.], this is someone who . . . has some animosity towards . . . Gurley for his discontinuing of hiring him; so it's extremely problematic. Him giving his personal opinion about . . . Gurley is going to be prejudicial to . . . Gurley and has nothing to do with [Sarah].

"THE COURT: . . . I thank you for your objection. It's noted, but it's overruled. I'm going to hear from these people. I will say this, though, counsel.

10

"If I hear from these people evidence that supports [Sarah's] claim, I'm *likely to issue a restraining order*; so as a courtesy to you, I'm asking you if you want to make a further record -- that is, [do] you want them to come in here and tell me whatever they have to say -- or do you want to at this point just submit and avoid that, with the understanding that *I am going to issue a restraining order*.

"Because of your client's professional situation, perhaps he doesn't want to have these witnesses come in. But it's up to you, counsel.

"Do you want to just submit at this point, or shall we call the witnesses?

"[GURLEY'S COUNSEL]: I'll have to confer a second, Your Honor.

"[GURLEY]: Briefly, if I may address Your Honor, as far as my professional situation, I was in my same office 20 years --

"THE COURT: I'm sorry, Mr. Gurley. The question really is do you want these witnesses to come in or do you not want them to come in?

"[GURLEY]: I do.

"THE COURT: You do. . . . Very well."  (Italics added.)

We do not read the trial judge's remarks as evidence of bias or fixed prejudgment before considering Gurley's defense. (See *Kreling v. Superior Court* (1944) 25 Cal.2d 305, 312 ["when the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to . . . [disqualifying] prejudice"].) At the point at which the trial court made the challenged comments, it had already received and reviewed Gurley's *written* response. Declarations are admissible in civil harassment proceedings. (*Duronslet v.*

11

*Kamps* (2012) 203 Cal.App.4th 717, 728–729.) And Gurley had already admitted having a Hell's Angel as a client and having sent the threatening email accusing Sarah of sending a "thug" to his house.

The trial court did not indicate it had closed its mind to any additional evidence Gurley wished to present. Viewed in context, the trial court merely gave Gurley permissible guidance—as well as an option to avoid further professional embarrassment and jeopardy—after the court heard evidence on a matter before it. (See *Gardner v. Mobil Oil Company* (1963) 217 Cal.App.2d 220, 225-226 [after receiving evidence, a court may provide "a tentative conclusion" so that " 'counsel may be advised what course to chart' "]; *Gary v. Avery* (1960) 178 Cal.App.2d 574, 579-580.) A court does not impermissibly prejudge a case when it offers preliminary impressions and does not suggest that the court's mind is closed. (*Gary, supra,* at pp. 579-580.)

Gurley has not demonstrated a denial of due process.

## C.

Gurley argues that the order violates his First Amendment right of petition because it purportedly makes no exception for communication related to his lawsuit. After reviewing his constitutional claim de novo (*R.D., supra*, 202 Cal.App.4th at p. 188), we conclude the order is not overbroad.

## 1.

We could treat Gurley's argument as forfeited because he failed to present it to the trial court. (See *Hale v. Morgan, supra,* 22 Cal.3d at p. 394 [constitutional issues not raised in trial court generally forfeited on appeal].) However, we will exercise our discretion to consider this new issue because it is purely a question of law, presented by undisputed facts. (*Ibid.*)

**2.**

Gurley is correct, of course, that a restraint on his right to petition the government could violate the First Amendment. (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1232, disapproved on another point by *Conservatorship of O.B., supra,* 9 Cal.5th at p. 1010 & fn. 7.)  The trial court's order contains no such restraint.  Gurley is prohibited from contacting Sarah, not any court or government agency.

Nor does the order impose "more burden" on Gurley's constitutional rights than is "necessary to serve its legitimate governmental interests."  (*R.D., supra,* 202 Cal.App.4th at p. 192.)  Gurley is prohibited from contacting Sarah both directly and "indirectly, in **any** way."  But this provision does not prohibit Gurley from communicating through counsel, as he suggests.  The order includes an express exception—allowing "[p]eaceful written contact through a lawyer or process server or other person for service of legal papers related to a court case."  Accordingly, we reject Gurley's overbreadth challenge.

**D.**

Finally, Gurley contends that section 527.6, subdivision (u)(1), is unconstitutional as applied because it deprives him and other "nonviolent respondents" of their federal constitutional right to bear arms.  Gurley, like anyone else subject to a civil harassment restraining order, is temporarily barred from purchasing, owning, or possessing a firearm or ammunition while the protective order is in effect.[3]  (§ 527.6, subd. (u)(1).)  Gurley forfeited his argument by failing to raise it below.

---

[3] The statute also temporarily requires him to relinquish any firearms already possessed. (See § 527.6, subd. (u)(2).)  In his response, Gurley expressly disclaimed ownership or possession of guns.

13

On appeal, at least in his heading, Gurley claims to be raising an as-applied constitutional challenge, rather than a facial challenge involving a pure question of law. An as-applied constitutional challenge is forfeited if not raised below because it is "premised upon the facts and circumstances of the individual case." (*In re Sheena K.* (2007) 40 Cal.4th 875, 885, 889.)

To the extent Gurley's briefs on appeal raise facial constitutional claims, we decline to exercise our discretion to address them. (See *In re Sheena K., supra,* 40 Cal.4th at pp. 885, 888-889; *Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) First, Gurley does not properly present his facial challenge under a separate heading. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [forfeiture results from failure to comply with rule requiring each argument be presented under separate heading].) Second, Gurley does not persuade us it is necessary to reach his abstract Second Amendment claim. (See *People v. Bowen* (1991) 231 Cal.App.3d 783, 789 ["constitutional questions are to be avoided when a case may be decided on other grounds"].) There is no evidence in the record, nor any claim in his appellate briefs, that Gurley is aggrieved because he wants or needs to acquire a gun during the remaining time the restraining order is in effect. (See *Johnson v. Department of Social Services* (1981) 123 Cal.App.3d 878, 883 [the "general rule is appellants must allege they belong to the class of persons whose constitutional rights they assert"].)

## DISPOSITION

The order granting Sarah R.'s request for a civil harassment restraining order is affirmed. Sarah R. is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

14

_____
BURNS, J.

We concur:

_____
JACKSON, P.J.

_____
NEEDHAM, J.

A160772