[No. E008853. Fourth Dist., Div. Two. Dec. 24, 1991.]

TONY ANDRE, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
CINDY CHEATHAM et al., Real Parties in Interest.

**COUNSEL**

Weldon Biggs and Linda M. Wilde for Petitioner.

No appearance for Respondent.

Lewis, D'Amato, Brisbois & Bisgaard, Kim Thurman Spirito and Kelly D. Little for Real Parties in Interest.

**OPINION**

**DABNEY, Acting P. J.**—Following an unsuccessful settlement conference, the trial court transferred this action from the superior court to the municipal court under the authority of Code of Civil Procedure section 396.[1] The basis for the order was the trial court's finding that plaintiff was "unlikely" to recover damages in excess of $25,000, and that the matter was therefore within the exclusive jurisdiction of the municipal court. (§ 86.)

Plaintiff filed a petition for writ of mandate with this court, which we summarily denied. The Supreme Court granted review, and subsequently transferred the matter back to this court with directions to issue an alternative writ of mandate, and to consider the effect of *Walker* v. *Superior Court* (1991) 53 Cal.3d 257 [279 Cal.Rptr. 576, 807 P.2d 418]. We complied with this directive, and partially grant the relief requested by remanding the matter to the superior court for further proceedings.

---

[1]As relevant, the statute provides that "[i]f an action or proceeding is commenced in or transferred to a court which has jurisdiction of the subject matter thereof as determined by the complaint or petition, and it thereafter appears from the verified pleadings, or at the trial, or hearing, that the determination of the action or proceeding, or of a cross-complaint, will necessarily involve the determination of questions not within the jurisdiction of the court, in which the action or proceeding is pending, the court, whenever such lack of jurisdiction appears, must suspend all further proceedings therein and transfer the action or proceeding . . . to a court having jurisdiction thereof . . . ."

All further statutory references are to the Code of Civil Procedure.

## FACTS OF THE CASE

The operative third amended complaint filed by plaintiffs Tony Andre and Lena Andre is entitled "Complaint for Tortious Breach of Insurance Contract," and seeks both compensatory and punitive damages. It alleged that defendants had procured or provided a policy of physical damage insurance covering plaintiffs' truck.[2] Plaintiffs further alleged that the truck was damaged in a collision, but defendant Old Republic Insurance Company refused to pay benefits. Old Republic was charged with breaching its duty of good faith and fair dealing and fiduciary duty, with additional reference to various acts based on the language of Insurance Code section 790.03, subdivision (h). Defendants Cindy Cheatham and Transit Insurance Services, Inc., (apparently the insurance agents who sold the policy) were charged under these theories and also with actual fraud.

According to the pleading, the dispute arose when Old Republic refused to pay on the ground that plaintiffs' son, who was driving the truck at the time of the accident, was not a covered driver. Plaintiffs alleged that they had been induced not to list the son as a driver by defendants Cheatham and Transit Insurance Services, Inc., acting as agents for the other defendants, and that they had in fact been encouraged to list another person as driver in order to obtain a better premium rate. A second area of contention involved whether or not the policy contained, or was supposed to contain, "down time" protection for the time in which the truck was inoperable.

By amendment, plaintiffs claimed damages consisting of benefits payable in the amount of $44,500; general damages, including mental and emotional distress, of $1 million; and punitive damages in the sum of $1 million. The at-issue memorandum, however, reduced the demand to $150,000 in general damages and $350,000 in punitive damages.

The matter was ordered to arbitration, and the arbitrator found that plaintiff Tony Andre had not received sufficient warning that the policy would not provide coverage for any driver, such as his son, who was under the age of 25. However, the arbitrator found no evidence of fraud, and ruled that there was insufficient evidence to support plaintiffs' claims that they believed they had purchased "down time" coverage. Although he found that "defendant" (which one is not clear) did not give prompt advisal of the intent

---

[2]Plaintiff Lena Andre did not seek a trial de novo from the arbitrator's finding that she had no standing to sue. Defendant Old Republic Insurance Company settled the case before arbitration. Neither is party to this proceeding; nor is defendant American Truck Underwriters, Inc., whose current status is not disclosed. Plaintiff Tony Andre is the sole petitioner here, while Cindy Cheatham and Transit Insurance Services, Inc., defendants below, appear here as real parties in interest. For convenience, we refer to them by their roles in the trial court.

to deny the claim, plaintiffs should have realized that denial was in fact imminent.

The arbitrator also found that the truck had been damaged in the amount of $3,873.58, and awarded plaintiff Tony Andre this amount against defendants Cheatham and Transit Insurance Services, Inc., based on the failure to adequately advise him of the policy's limitations. Plaintiff Lena Andre was held to have no standing because she was not a named insured, and no mention was made of emotional distress. The judgment was subject to an offset in the amount of $2,500, representing a settlement by Old Republic.

Plaintiff Tony Andre filed a request for trial de novo (§ 1141.21) and a settlement conference was held on or about November 5, 1990. This conference was not reported and there are conflicting assertions about what was said and discussed. Plaintiff asserts, in the petition as verified by counsel, that the settlement judge "attempted to compel" plaintiff to accept defendants' offer of $10,000, and "indicated . . . that if [plaintiff] did not accept this offer, respondent court *could* order the matter transferred to Municipal Court." (Italics added.) ▮▮▮▬▬ After plaintiff stated his position that the transfer was prohibited by law, "[plaintiff] refused to accept the settlement offer, and nothing further was said about a transfer of the action."[3]

On November 5, 1990, however, defendants' attorney wrote to plaintiff's counsel extending the settlement offer of $10,000, and further stating "[a]dditionally, Judge Kaiser indicated that he was ordering the case to municipal court on the basis that plaintiffs were *not* able to demonstrate to him that they had provable damages in excess of the jurisdictional limit." Plaintiff asserts that the court conducted private sessions with each side, and that although such a remark may have been made to defense counsel, no such positive intention was expressed to plaintiff or his attorney. This discrepancy cannot be resolved on the record, and we address the effect of this uncertainty below.

On November 8, 1990, the trial court did indeed order the action transferred to the municipal court. In pertinent part, the order recites:

"The Court conducted a settlement conference and discussed the liability and damage issues with counsel for plaintiff and defendant.

---

[3]Plaintiff suggests that the transfer order was punitive, or retaliatory, for his refusal to accept defendants' offer, but also concedes that the record contains no actual evidence to support this view. Even where proceedings are reported, it may be difficult to distinguish the case in which the court orders a transfer over plaintiff's objections in a last effort to coerce a settlement, and that in which the transfer is founded on a reasonable belief that the statutory minimum will not be met. In the latter case, the fact that the court may express some exasperation with plaintiff will not invalidate the ruling.

"After the settlement conference, the court read the third amended complaint and its amendments, the motion for good faith settlement and the arbitrators [*sic*] opinion and award.[4]

". . . . . . . . . . . . . . . . . . . . . . . .

"The arbitrator decided the issue of down time against the plaintiff. Based on the discussion with counsel for the parties at the settlement conference, it appears that any recovery for down time or loss of income is highly unlikely.

"Based on the above the court concludes that plaintiff is unlikely to recover damages of $25,000 or more."

## DISCUSSION

### A.

At the time the petition was originally filed with this court, the power of the superior court to transfer an action to the municipal court on jurisdictional grounds, based on its evaluation of the case's value, was the subject of conflicting recent rulings. Several cases, beginning with *Campbell* v. *Superior Court* (1989) 213 Cal.App.3d 147 [261 Cal.Rptr. 509], recognized the power, although limiting it by varying standards. However, at least one other appellate court ruled that the jurisdictional issue was generally controlled by the demand of the complaint, in a case which reached the Supreme Court as *Walker* v. *Superior Court, supra,* 53 Cal.3d 257. In deciding *Walker,* the Supreme Court set forth the standards by which we now review the instant petition.

■ Relying both upon the language of section 396 and the courts' "inherent authority to control their own calendars and dockets, and to inquire into their own jurisdiction," the court first held that the trial court may go beyond the pleadings in deciding whether or not to transfer an action to a lower court. ■ It also held that the court may conduct a pretrial hearing "to obtain information about whether it should exercise its transfer authority." (*Walker* v. *Superior Court, supra,* 53 Cal.3d at p. 267.) Next, it focussed on articulating the specific determination which must be made by the court before ordering a transfer.

---

[4]The motion for good faith settlement, presumably brought by Old Republic Insurance Company, has not been made part of the record.

■ After sifting through formulations ranging from "unlikely" to "[the jurisdictional minimum] was virtually unattainable" (see *Williams* v. *Superior Court (RD Instruments)*[5] (1989) 216 Cal.App.3d 378, 382 [264 Cal.Rptr. 677]; *Campbell* v. *Superior Court, supra,* 213 Cal.App.3d at p. 154), the court approved a standard which comported with the statutory requirement that an action subject to transfer must " '*necessarily* involve the determination of questions not within the jurisdiction of the court . . . .' " (*Walker* v. *Superior Court, supra,* 53 Cal.3d at p. 269 [italics in original].) Both "unlikely" and "highly unlikely" were rejected as failing to reflect the required "high level of certainty"; however, if the facts of a case show that an award exceeding $25,000 "was virtually unattainable" or that the " 'lack of jurisdiction is clear,' " transfer is permissible and proper. (*Id.,* at pp. 269-270.) However, the court also cautioned that, in considering the issue, the trial court should not attempt to determine the merits of the dispute, but should limit itself to an evaluation of the amount fairly in controversy. (*Id.,* at p. 270.)

■ Turning to procedure, the court held that due process requires that the party whose case may be transferred must be given the opportunity to respond and offer reasons why transfer is not appropriate. ■ It also commented strongly that the absence of a record of the proceedings on transfer hampered review of the trial court's decision, and encouraged the practice of preparing a full record. (*Walker* v. *Superior Court, supra,* 53 Cal.3d at pp. 271-272.) ■ Finally, it held that the standard of review is that of abuse of discretion. (*Id.,* at p. 272; see also *Campbell* v. *Superior Court, supra,* 213 Cal.App.3d at p. 153.)

### B.

We turn now to the application of these principles to the case at bar.

■ Dispositive, in our view, is the lack of any record of the settlement proceedings which resulted in the transfer. We recognize that the trial court made a careful order which reflects a conscientious evaluation of the information before it. However, plaintiff argues that the court did not inform him that it intended to transfer the matter. From the representations made in the petition, plaintiff's only response to the court's mention of its power under section 396 was to remind the court that this issue was the subject of pending review by the Supreme Court, and the view that such transfer was not permissible.

As the court noted in *Walker,* the desirability of a noticed motion was made clear in *Campbell,* well before the proceedings below. (213 Cal.App.3d

---

[5] We use the expanded form of title, as we discuss two cases entitled *Williams* v. *Superior Court.*

at p. 154, fn. 3.) No such procedure was used here, and we cannot find from the record that plaintiff was adequately notified of the probable fallout from the settlement conference. Defendants point out that their letter of November 5, 1990, did inform plaintiff's counsel that the court had at least expressed to *them* the intention to transfer the case, and suggest that this gave ample opportunity to resist. However, at this point plaintiff had no forum in which to object. No motion was pending, no briefing had been requested, and plaintiff had no way of knowing whether the representations in the letter were accurate.

The essence of due process is notice and the opportunity to be heard. (*Mullane* v. *Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652].) Detailed as the trial court's evaluation appears to have been, we cannot say that it was not founded upon some misperception of fact or law where plaintiff was not, so far as the record reflects, afforded the right to present his arguments against the proposed ruling.[6]

This in essence disposes of the argument raised in defendants' demurrer to the effect that no abuse of discretion has been shown; as we reject defendants' assertion that ample notice was given, we cannot speculate upon what facts or argument might have been raised by plaintiff to persuade the court not to transfer the case. We are constrained by the dictates of due process to afford plaintiff his day in court.

We also note that the minute order recites a finding that a judgment within the jurisdictional limits of the superior court is "unlikely." This standard was held insufficiently stringent in *Walker*. However, we do not believe that the trial court's use of this standard requires the corollary assumption that it did not believe that a higher standard had been reached. Accordingly, a remand is proper to permit the court to determine whether the judgment in this case will *necessarily* fall below the jurisdictional limits of the court.[7]

Although, with the limited information before this court, we cannot find that transfer was proper as a matter of law, we do not foreclose the trial court

---

[6] In *Walker* v. *Superior Court, supra*, no noticed motion was held on either of the matters before the court. However, it was "uncontested" that both plaintiffs had the opportunity to respond to the court's concerns, and that neither claimed prejudice. Here, this issue is disputed and plaintiff does claim prejudice in that he was not prepared to demonstrate the absolute value of his case at the settlement conference.

[7] Even if we were inclined to conduct our own review, the lack of any record raises a serious obstacle. The minute order indicates that the trial court relied at least in part on the discussions at the settlement conference, but as we cannot know the content of these discussions, we cannot know on which side they should be weighed. The motion for good faith settlement which the trial court also reviewed is not part of the record here; in any event,

from reaching the same result after duly hearing the issue. We note that in *Walker*, the court concluded that *Campbell* was correctly decided even though the complaint for "various nonphysical torts" arising out of a shoplifting detention sought general damages of $500,000 and punitives of $1 million. The plaintiff had sought neither medical nor psychological treatment for his alleged injuries, and claimed no wage loss. A respected arbitrator had valued the case at $1,400 after a full hearing. On appeal, the *Campbell* court also noted that the availability of punitive damages depended on an employer's vicarious liability, and appeared to be factually very doubtful. In the circumstances, the trial court's ruling was within its discretion.[8] (See also *Williams* v. *Superior Court (RD Instruments)*, *supra*, 216 Cal.App.3d 378.) ▇▇▇▇ ▇ In a proper case, the trial court is justified in concluding that the damages claimed for the alleged injury are grossly inflated, or not authorized by law although, as noted above, it is limited in the extent to which it can weigh the merits of the action.[9]

The alternative writ, having served its purpose, is discharged. Let a peremptory writ of mandate issue, directing respondent to vacate its order of transfer and to conduct further proceedings in conformity with this opinion.

Timlin, J., and McDaniel, J.,* concurred.

---

it is unclear whether plaintiff was aware of the trial court's consideration of the information contained therein or had any opportunity to refute it.

[8]In *Walker*, by contrast, both plaintiffs presented claims for medical expenses and lost wages; one plaintiff obtained an arbitration award for $25,000 and in the other case a settlement judge recommended settlement at the same figure. (53 Cal.3d at p. 273.) In *Williams* v. *Superior Court (Gemco)* (1990) 219 Cal.App.3d 171 [268 Cal.Rptr. 61], plaintiff claimed $6,000 in medical expenses and $40,000 in lost wages, with residual disability; she was awarded $17,000 in arbitration prior to seeking a trial de novo. In all three cases the appellate result was a finding of abuse of discretion.

[9]We note that this court has previously held that emotional distress damages are not recoverable in a "garden-variety negligence concepts" case. (*Soto* v. *Royal Globe Ins. Co.* (1986) 184 Cal.App.3d 420, 434 [229 Cal.Rptr. 192].) As an appropriate caution with respect to the finding on fraud, in *Williams (RD Instruments)*, the court noted that an arbitrator's award of a small amount of damages is properly given more weight than is a finding of no liability at all, where a second trier of fact might reach the opposite conclusion. (216 Cal.App.3d at p. 386, fn. 4.)

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.