[No. A059924. First Dist., Div. Five. Aug. 25, 1993.]

WILLIAM CAMPISI, JR., et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
BROADWAY MOTORS FORD, Real Party in Interest.

**COUNSEL**

William Campisi, Jr., in pro. per., and for Petitioners.

No appearance for Respondent.

Archer, McComas & Lageson and Eric G. Lundberg for Real Party in Interest.

## OPINION

**KING, J.**—In this case we hold that parties had sufficient notice and opportunity to be heard before the superior court transferred their case to municipal court pursuant to *Walker* v. *Superior Court* (1991) 53 Cal.3d 257 [279 Cal.Rptr. 576, 807 P.2d 418], when it became clear the matter would necessarily result in a verdict below the amount sufficient to establish superior court jurisdiction. There are three levels of trial courts: the superior court, the municipal court, and the small claims court; this case does not belong in the first, does belong in the second, but would find its true home in the third.

Petitioners William Campisi, an attorney, and Glenna Mills (Campisi) are plaintiffs in a lawsuit against real party Broadway Motors Ford (Broadway), arising from the allegedly faulty repair of their car. After settlement proceedings the superior court found that a verdict in excess of $25,000, the jurisdictional minimum of the superior court, could not be obtained and transferred the matter to municipal court. Campisi sought a writ of mandate to set aside the transfer order. We denied the petition, but the Supreme Court granted review and retransferred the matter with directions to issue the alternative writ. Having done so and heard oral argument, we again deny the petition.

## I. PROCEDURAL BACKGROUND AND FACTS

The facts of this case are somewhat sketchy. Apparently Campisi purchased a 1989 Mercury Sable and was involved in an accident on December 1, 1988. Attached to Campisi's complaint are two insurance appraisals dated December 11, 1988. An appraisal bearing the notation "front end damage" estimates repair at $4,349; the other, apparently for damage to the vehicle's right rear, estimates repair at $2,239.07. Campisi had the car repaired by Broadway. Campisi's complaint admits that repair invoices were sent to Campisi's insurance company; there is every reason to believe the insurance company, not Campisi, paid for the repair, minus applicable deductibles.

Over *three years* later, on December 24, 1991, Campisi filed a complaint against Broadway alleging that on December 11, 1988, Broadway had breached the repair contract by "repairing the damage to plaintiffs' automobile in a manner which was not to industry standards and was unsafe, and

by charging plaintiffs for new parts when in fact they installed used parts or merely repaired damaged parts." The complaint further alleges that "plaintiffs' car is unsafe in the event of front end collision because of inadequate repair; there is moisture in tire well, excessive sound infiltration around cargo door, and missing sound insulation; storage compartment door doesn't close flat indicating frame not in alignment; right interior panel is loose; rear tires wore out prematurely costing plaintiff $220 to replace because rear wheels not aligned; plaintiffs were overcharged in that they paid for new parts and received used or repaired parts which cost less."

A second cause of action for fraud alleged Broadway concealed the fact used parts were utilized while Campisi's insurance company was billed for new parts. Campisi also alleged entitlement to punitive damages because Broadway acted with malice, fraud and oppression in repairing the car defectively in 1988. Campisi alleges the repairs presently endangered occupants of the car in the event of another front-end collision.

After discovery, the case was assigned to an early disposition program. A settlement conference was conducted by Judge Gordon Baranco on September 28, 1992. In the petition for review to the Supreme Court after our initial summary denial, Campisi admitted that during the settlement conference the court "more than once stated in chambers that it was considering transferring the matter to municipal court."

After the conference the parties appeared in open court. Judge Baranco stated that "after having reviewed the file, the court file, having reviewed the statements submitted by counsel and speaking with . . . the parties, I am convinced that this case should be transferred to the Municipal Court, in that the court on its evaluation believes that the case would not result in a verdict in excess of $25,000." The court also noted that it had discussed the case with other members of a panel of judges involved in the early disposition program.

Campisi objected "strenuously," maintaining it was unfair for Judge Baranco to hear a settlement conference and then make a substantive ruling regarding the value of the case. Campisi suggested that while speaking in the settlement conference, he may have spoken so as to minimize the value of his case to obtain a settlement. He repeated his objection and characterized it as a denial of due process, but he did *not* object on the ground that he lacked sufficient notice of the intended transfer. He also did not object that he was deprived of an opportunity to be heard: his objection was that he was required to be heard within the context of a settlement proceeding, which he apparently felt required him to risk transfer by minimizing the dollar amount

of his case. Campisi did not ask for a continuance to respond to the proposed transfer with points and authorities or other written argument.

Campisi challenged the transfer order by this petition for extraordinary writ. The petition disingenuously states the transfer was ordered "without notice." The petition's primary argument was that the transfer order was "impermissibly based on settlement negotiations." In barely a page did petitioners argue the issue of lack of notice or opportunity to be heard, which they did not raise below.

As noted, we summarily denied the petition. Before doing so we considered and rejected the petition on the merits, our silent telegram of summary denial notwithstanding. After Campisi filed a petition for review which admitted notice of the intended transfer, the Supreme Court granted review and retransferred the matter to this court with directions we issue an alternative writ. The Supreme Court ordered us to "reconsider the matter" in light of *Walker, Kent* v. *Superior Court* (1992) 2 Cal.App.4th 1392 [4 Cal.Rptr.2d 21] and *Andre* v. *Superior Court* (1991) 2 Cal.App.4th 11 [2 Cal.Rptr.2d 815]. Both *Kent* and *Andre* involve the issue of sufficient notice and opportunity to be heard. Neither involve the question of purportedly impermissible use of settlement negotiations as a basis of determining if a *Walker* transfer is warranted.

## II. Discussion

■ While we have been directed to focus on procedure, there is no doubt the trial court's ruling was substantively correct. Indeed, the petition only obliquely attacks the substantive ruling: it blithely assumes the case can lead to a superior court verdict, and attacks two alleged procedural flaws in the proceedings below.

Contrary to Campisi's protestations, his assumed premise is wrong: this is absolutely not a superior court case. The astute reader will note that the allegedly unsafe condition of the petitioners' vehicle postdates the allegedly defective repair by three years. Moreover, Campisi's personal financial loss from the alleged faulty repair is demonstrably insubstantial. The allegations of direct economic harm are limited to the damage items quoted from the complaint, *ante.* Even if true the items of repair are relatively minor and certainly do not suggest an expense to Campisi even close to $25,000.

The only other damage allegation of the complaint is a brief paragraph alleging punitive damages, based on the malicious use of used parts so as to threaten the safety of the car's occupants in the event of another front-end

collision. Campisi argues they can show an "egregious" act of insurance fraud on the part of Broadway. Campisi overlooks the fact the allegedly defrauded insurance company is not seeking damages in this proceeding—unless Campisi has failed to tell us that they somehow represent the insurer in a reverse form of subrogation.

That aside, the only evidence advanced that the vehicle was rendered unsafe to drive *by the 1988 repair* is an inspection report dated on November 4, 1992—well over a month *after* the settlement conference and transfer order. This invoice was not submitted to the trial court, and petitioners have failed to seek acceptance of the invoice as new evidence at the appellate level. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 659, p. 638.) In any case, the inspection merely indicates that almost four years after the allegedly defective repair, the car is currently "unsafe to drive" because of tire and suspension damage. There is no estimate of current repair costs, and there is utterly no evidence of a causal link between the present condition of the car and the four-year-old repairs.

The trial court was obviously familiar with these facts, had conducted settlement proceedings, and had discussed the matter with other judges. Campisi can hardly meet the requisite showing that the transfer order was an abuse of discretion. (*Walker* v. *Superior Court, supra,* 53 Cal.3d at p. 272.) Indeed, this is a clear case of an attorney overinflating a cause of action to justify a superior court filing, one of the causes of clogged calendars for which *Walker* provides a remedy. This "Case of the Mangled Mercury" belongs either in municipal court or before Judge Wapner.

As noted *supra,* the petition raises two procedural issues regarding the proceedings below: improper use of information from settlement proceedings and lack of notice. We construe the Supreme Court's transfer order as a directive that we focus only on the latter. ■ In any case, the former is without merit. Campisi claims it was improper for the trial court to rely on information disclosed during settlement discussions. There is nothing improper with the trial court's use of such information, which is often the best way of truly valuing a case. Furthermore, there is no authority for petitioners' position that a trial court may not use such information. *Walker,* relying on this court's decision in *Campbell* v. *Superior Court* (1989) 213 Cal.App.3d 147, 150 [261 Cal.Rptr. 509], said only that settlement information should not be "improperly divulged in the context of a hearing" on a proposed transfer to municipal court. (*Walker* v. *Superior Court, supra,* 53 Cal.3d at p. 271.) No decision has said that such information may not be relied upon for purposes of evaluation. Campisi contends it was unfair for the settlement judge to rule on the transfer matter, because of an alleged

"implied promise" that candor regarding the value of the case at settlement conference would not be used against them on the *Walker* issue. There is no evidence of such an "implied promise"; if settlement evaluations cannot be used for *Walker* purposes, the utility of the transfer procedure will be diminished.

■ We now reach the remaining issue of the petition, which we regard as a non-issue for Campisi's failure to object below on the proper ground. We consider the issue only at the direction of the Supreme Court.

Campisi contends there was neither notice nor a sufficient opportunity to be heard on the question of transfer. The claimed lack of notice is defeated by Campisi's admission in the petition for review that the possibility of transfer was raised by the court several times during the settlement conference. Campisi, however, complains that the written notice of the date and time of the settlement conference did not give notice of the possibility of transfer. We interpret this contention as an objection to the lack of a formal noticed motion. In *Campbell*, we said "a noticed motion procedure would be preferable" (213 Cal.App.3d at p. 154, fn. 3); we did not say it was mandatory, and neither has the Supreme Court. In its subsequent *Walker* decision, the court declined to hold that a formal noticed motion was necessary, but merely stated that the parties should not be "surprised" by a transfer order and must have "sufficient opportunity to respond and offer reasons why transfer should or should not be ordered." (*Walker* v. *Superior Court, supra,* 53 Cal.3d at p. 272.)

The boundaries of acceptable "sufficient opportunity" have not yet been well defined. Campisi urges a lack of sufficient opportunity on the ground that the hearing before the trial court lasted only five minutes. However, Campisi, representing himself and his co-petitioner, was given a chance to respond and orally argue against transfer. His response was limited to an objection to the trial judge relying on settlement conference information. Campisi clearly had the opportunity to be heard on the transfer question in open court. He not only failed to make an objection that he had insufficient time to respond, but he failed to request a continuance for further argument or briefing.

This case is readily distinguishable from *Andre* and *Kent.* In *Andre,* the court entered a transfer order after a settlement conference with no warning that it was considering transfer and with no hearing: "[A]t this point plaintiff had no forum in which to object. No motion was pending, [and] no briefing had been requested . . . ." (*Andre* v. *Superior Court, supra,* 2 Cal.App.4th at p. 19.) Rather, the transfer order issued like a bolt from the blue out of the trial judge's chambers.

The *Kent* decision is not so much distinguishable as it is of little analytical value, given its sparse discussion of the facts and its rhetorical style. All we can tell for sure is that the plaintiffs appeared on the trial date ready for trial, and, "lo and behold, . . . were shuffled out the door with a transfer order to municipal court. There was no notice of a hearing. Indeed, there was no hearing!" (*Kent* v. *Superior Court, supra,* 2 Cal.App.4th at p. 1394.) That is not what happened in the case before us. Campisi had ample notice during the settlement conference and a sufficient opportunity to respond in open court—at a hearing in which the complaints of lack of notice and an opportunity to be heard, which Campisi urges in this court, were not raised.

It is not cynical to observe that aside from the foregoing discussion, Campisi was "on notice" from the day the complaint was filed that this was a municipal court action being prosecuted in the wrong court. All too frequently this court sees overvalued cases brought in superior court, whether because such cases tend to generate more fees for discovery, because counsel has not realistically evaluated his or her case, or because as here, an attorney is representing himself without the expense for attorney fees which the other side must incur. Our superior courts are busy enough with serious felony cases, complex environmental and insurance litigation, family law proceedings and substantial civil cases. The filing of a miniscule car-repair case in superior court is an inexcusable abuse of the judicial system, which vests in the superior court the authority to hear weightier matters than a front-end alignment. Responsible attorneys should not contribute to the clogging of our superior court docket by, for instance, confusing the suspension of their car with the suspension of habeas corpus.

## III. CONCLUSION

The alternative writ is discharged. The petition for writ of mandate is denied. Broadway shall recover their costs of this writ proceeding.

Peterson, P. J., and Haning, J., concurred.

Petitioners' application for review by the Supreme Court was denied December 16, 1993.