Filed 8/21/20  Wheeler v. King Digital Entertainment PLC CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| CHARLES WHEELER et al.,<br><br>             Plaintiffs and Appellants,<br><br>v.<br><br>KING DIGITAL ENTERTAINMENT PLC et al.,<br><br>             Defendants;<br><br>BOTTINI & BOTTINI, INC.,<br><br>             Appellant;<br><br>SCOTT + SCOTT LLP,<br><br>             Respondent. | A158660<br><br>(San Francisco City and County Super. Ct. Lead Case No. CGC-15-544770) |

This appeal involves a dispute between counsel regarding the allocation of attorney fees awarded from a common fund in a class action.  Bottini & Bottini, Inc. represented two members of the class but were not selected to serve as class counsel.  After an $18.5 million settlement was negotiated, roughly $5.5 million was awarded to plaintiffs' counsel, and judgment was entered, the trial court concluded the Bottini firm should receive $158,446 out of a total requested fee

1

award of $338,699.25. The Bottini firm appealed, arguing the trial court abused its discretion.[1] We disagree and affirm.

## BACKGROUND

### A.

"California has long recognized, as an exception to the general American rule that parties bear the costs of their own attorneys, the propriety of awarding an attorney fee to a party who has recovered or preserved a monetary fund for the benefit of himself or herself and others. In awarding a fee from the fund or from the other benefited parties, the trial court acts within its equitable power to prevent the other parties' unjust enrichment.' " (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488–489 (*Laffitte*).)

When determining attorney fee awards in class actions, courts have an independent obligation to ensure that the amount is reasonable. (*Laffitte, supra,* 1 Cal.5th at p. 504; *Lofton v. Wells Fargo Home Mortgage* (2014) 230 Cal.App.4th 1050, 1055, 1064-1065 (*Lofton*).) A court may set the fee award by choosing an appropriate percentage of the monetary fund, which can then be cross-checked for reasonableness by comparing the amount to the lodestar. (*Laffitte, supra,* 1 Cal.5th at pp. 503-504.)

Additionally, the attorney fee award is wholly contingent on achieving benefit for the class. (See *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1142 (*Rebney*), disapproved on other grounds by

---

[1] Although the Bottini firm's clients, Charles Wheeler and Phyllis Wheeler, filed the underlying motion and are named as additional appellants on the notice of appeal, we refer to the firm as the appellant because it is more directly interested.

2

*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 269-270; *In re Cendant Corp. Sec. Litig.* (3d Cir. 2005) 404 F.3d 173, 186-187 (*Cendant*).) This requirement applies both to lead counsel and non-lead counsel—each must demonstrate that their work actually benefited the class. (See *Rebney, supra,* 220 Cal.App.3d at p. 1142; *Lofton, supra,* 230 Cal.App.4th at p. 1064; *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 841-845 (*Thayer*); *Cendant, supra,* 404 F.3d at pp. 181, 195.) Thus, fees incurred by non-lead counsel in filing a complaint on behalf of their individual clients, or monitoring lead counsel's representation of the class, are generally not recoverable out of the class's recovery *unless* such efforts increased the recovery to the class. (*Lofton, supra,* 230 Cal.App.4th at p. 1064 ["[a] duplicative action that does nothing to contribute to a result achieved in a class action does not justify a separate award of fees"]; *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1054-1055 & fn. 9; *Thayer, supra,* 92 Cal.App.4th at p. 841 ["it is . . . impossible to conclude that the filing of so many nearly identical actions significantly increased the value of this litigation"]; *Cendant, supra,* at p. 191.)

## B.

In April 2015, the Bottini firm filed a putative class action complaint on behalf of the Wheelers against King Digital Entertainment plc (King) and certain of its officers, directors, and underwriters. The Wheelers sought damages pursuant to sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l(a)(2), 77o), on behalf of themselves and a proposed class of similarly situated plaintiffs, for misstatements and omissions allegedly made in connection with King's initial public offering. The Wheelers' complaint

was the fifth such complaint filed against King; Sean Debotte and Michael Nunes, represented by Scott + Scott LLP, filed the first class action suit a month earlier.

Less than a month later, the trial court consolidated six of these related actions, appointed the Scott firm and Robbins Geller Rudman & Dowd LLP to serve as lead counsel representing plaintiffs, and designated three law firms, including the Bottini firm, to serve as an executive committee. The order granted lead counsel the authority to make all decisions regarding the plaintiffs' pleadings and to speak for the plaintiffs with respect to pre-trial procedure, trial, and settlement. Notably, the order also gave lead counsel the authority to "make all work assignments in such manner as to facilitate the orderly and efficient prosecution of the Consolidated Action and to avoid duplicative or unproductive effort." Before submitting the proposed order to the court, all of plaintiffs' counsel, including the Bottini firm, agreed to the terms of the consolidation order.

About a year later, following a mediation before retired Judge Layn Phillips, the parties settled the action. King agreed to pay $18.5 million (plus any accrued interest) into a settlement fund. The parties also agreed that the trial court would retain jurisdiction over implementation and enforcement of the settlement agreement. The trial court (Judge Curtis Karnow) granted preliminary approval to the settlement and set a schedule for final approval and for filing of an attorney fees application.

In preparing to file their fees motion, lead counsel asked the executive committee firms to provide declarations attesting to their lodestars and expenses. The Bottini firm's declaration sought

4

$225,799.50, which represented its lodestar for 508.40 hours, plus $2,333.88 in expenses. Those 508.40 hours included: (1) 13.7 hours on factual investigation; (2) 15.3 hours on pleadings, briefs, and pretrial motions; (3) 43 hours on drafting the initial or amended complaints; (4) 388.4 hours on document review; (5) 9.1 hours on legal research; (6) 1.5 hours on client/shareholder communications; (7) 14.1 hours on litigation strategy and analysis; and (8) 23.3 hours on settlement negotiations, stipulation, and plan of allocation.

When lead counsel filed their motion for an award of attorney fees and expenses, they opted to omit the time and expense declarations from non-lead firms; instead, they relied on lead counsel's declarations of time and expenses. Lead counsel sought 29.5% of the $18.5 million recovery, or $5,457,500, which equated to a multiplier of approximately 1.5 of lead counsel's aggregate lodestar of $3,672,792.75 (for over 5,900 hours).

The trial court granted the motion. The trial court did not use a lodestar/multiplier method but, rather, based its fee award on a percentage of the recovery—29.5%. The order also stated: "The awarded attorneys' fees shall be allocated by Class Counsel among Plaintiffs' Counsel in a manner which they in good faith believe reflects the contribution of counsel to the prosecution and settlement of the Litigation."

On the same day, the trial court gave its final approval to the settlement and entered judgment. The trial court retained jurisdiction over "any award or distribution of the Settlement Fund," as well as

5

"hearing and determining applications for attorneys' fees, interest and expenses."

## C.

Without conferring with the Bottini firm, lead counsel allocated it $124,000—slightly more than half of the Bottini firm's claimed lodestar and expenses ($228,133.38). Francis Bottini, Jr. contacted lead counsel, questioned the allocation, and attempted to meet and confer.

After reaching an agreement with Robbins Gellar but not with the Scott firm, the Bottini firm sought relief from the trial court. Specifically, the Bottini firm asked the court to refer the attorney fees dispute to Judge Phillips (who had mediated the settlement) or, in the alternative, award it additional attorney fees and expenses in the amount of $162,033.13 plus interest. This number was arrived at by multiplying the Bottini firm's lodestar ($225,799.50) by a 1.5 multiplier, adding $2,333.88 in expenses, and then subtracting $179,000 in attorney fees that had already been paid by the Scott firm and Robbins Geller.

The Scott firm opposed the motion, disputing the Bottini firm's claim that it had agreed to arbitrate the fee dispute. The Scott firm conceded Bottini & Bottini performed the work described in its fees declaration but argued: "payment of fees in this action was never a mathematical calculation of hours and rates. Instead, fee payments were to directly reflect the contributions to the litigation and the settlement, and that is what was done in this case." The Scott firm also contended that because it did not assign work to Bottini & Bottini, any

6

work the Bottini firm performed was done without lead counsel's authorization.

In reply, Bottini & Bottini argued it was irrelevant that the Scott firm did not assign it work because Robbins Geller had. Its reply declaration only establishes that Robbins Geller assigned document review work to the Bottini firm.

## D.

In the two years since the trial court entered judgment, the case had been reassigned. Judge Anne-Christine Massullo granted in part and denied in part the Bottini firm's motion. Judge Massullo declined to compel arbitration, concluding that the two firms had not agreed to arbitrate the attorney fees dispute. The court next concluded that the Scott firm failed to act in good faith when it allocated "an arbitrary" amount ($124,000) to the Bottini firm on the basis of faulty assumptions—that lead counsel had not assigned any of the work shown in the Bottini firm's declaration and that its lodestar was unreasonable.

Although the trial court also observed the Scott firm had not raised a timely "reasonableness" objection to the Bottini firm's lodestar, it nonetheless concluded the Bottini firm was only entitled to its document review fees ($158,446) because that was its only assignment approved by lead counsel. Peculiarly, the trial court stated the issue had not been raised by the parties or the court "in briefing or oral argument."

The trial court also declined to apply a multiplier to the document review lodestar, explaining that the Bottini firm had not submitted any evidence justifying a multiplier and that Judge

7

Karnow's original fee award had been based on a percentage of the recovery. Finally, the trial court declined to award postjudgment interest, reasoning that it was not appropriate because Judge Karnow's original fees award did not allocate a specific amount to the Bottini firm. After taking the amount Robbins Gellar had already paid into account, the trial court concluded the Scott firm owed "less than the $124,000 [it] originally offered."

**DISCUSSION**

We review attorney fee awards for abuse of discretion. (*Laffitte, supra,* 1 Cal.5th at p. 488.) " 'The "experienced trial judge is the best judge of the value of professional services rendered in [her] court, and while [her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ibid.*) Fees awarded by the trial court are presumed reasonable, and it is the appellant's burden to show an abuse of discretion. (*Ibid.*; *Wilder v. Wilder* (1932) 214 Cal. 783, 785 ["[a]n abuse of discretion is never presumed and it must be affirmatively established"].)

**A.**

The Bottini firm first argues the order must be reversed because the trial court violated due process by sua sponte examining its fees for lead counsel's authorization, without providing notice or an opportunity to argue the firm's position. We disagree.

**1.**

"The essence of due process is notice and the opportunity to be heard." (*Andre v. Superior Court* (1991) 2 Cal.App.4th 11, 19; accord, *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306,

8

314.) Due process is violated when a party is not "afforded the right to present his arguments against the proposed ruling." (*Andre, supra*, at p. 19.)

**2.**

There are at least two problems with the Bottini firm's argument. First, it ignores the fundamental question it, as the moving party, asked the trial court to resolve. The Bottini firm cites no authority supporting its apparent position that it became entitled to its entire lodestar (plus a multiplier of 1.5) merely by showing Scott & Scott failed to allocate fees in good faith. In fact, the Bottini firm is only entitled to payment of fees from the common fund to the extent it can show its efforts conferred a benefit on the class beyond that conferred by lead counsel. (See *Rebney, supra,* 220 Cal.App.3d at p. 1142 ["an award of attorney fees in class action litigation must be tied to counsel's actual efforts to benefit the class"]; *Lofton, supra,* 230 Cal.App.4th at p. 1064; *In re Vitamin Cases, supra,* 110 Cal.App.4th at pp. 1054-1055 & fn. 9; *Thayer, supra,* 92 Cal.App.4th at pp. 841, 844; *Cendant, supra*, 404 F.3d at pp. 181, 191, 195.) Otherwise, there has been no unjust enrichment. (*Laffitte, supra*, 1 Cal.5th at pp. 488–489.)

Thus, regardless of whether it chose to address the issue in its moving papers, the Bottini firm bore the burden of showing that its efforts (beyond a lodestar of $124,000) benefited the class. (See *In re Marriage of O'Connell* (1992) 8 Cal.App.4th 565, 574-576 [failing to specify a particular issue in pleadings does not preclude a court from granting relief on issue noticed motion implicitly places before court as long as losing party had reasonable opportunity to address it].) And, at least for the period after consolidation, it was agreed by all named

9

plaintiffs' counsel that, to avoid duplicative or unproductive efforts, lead counsel would authorize the work of other firms, thereby essentially serving as a proxy for benefit. Accordingly, it was incumbent upon the Bottini firm to demonstrate that lead counsel had authorized the work or to otherwise show that it benefitted the class. The trial court correctly focused on this issue.

Second, the trial court was simply wrong when it stated that the parties did not raise the issue themselves. To be sure, the Scott firm conceded the Bottini firm *performed* the work described in its declaration. But the Scott firm also argued that it did not assign the Bottini firm any of the work reflected in its lodestar. The Bottini firm admits that it understood the thrust of the argument—that the work described in the Bottini firm declaration was performed without lead counsel's authorization. In its reply brief to the trial court, the Bottini firm submitted a declaration that co-lead counsel Robbins Gellar assigned it the document review work. Thus, not only did the Bottini firm have notice that the issue was contested, it directly addressed the issue.

We see no reason for a second bite at the apple. The trial court did not violate due process.

## B.

The Bottini firm suggests substantial evidence does not support the trial court's finding that any work beyond document review was not authorized by lead counsel. The Scott firm has the better argument.

Bottini's reply declaration (asserting Robbins Geller authorized the document review tasks) and the Scott firm's declarations (asserting it provided no authorization) constitute substantial evidence supporting

10

the trial court's finding.  Simply put, the Bottini firm did not meet its burden to show it conferred a benefit on the class that went beyond $158,446 in fees incurred for authorized document review.  (See *Laffitte, supra,* 1 Cal.5th at p. 488; *Lofton, supra,* 230 Cal.App.4th at p. 1064; *Rebney, supra*, 220 Cal.App.3d at p. 1142; *Thayer, supra,* 92 Cal.App.4th at pp. 841, 844; *In re Vitamin Cases, supra,* 110 Cal.App.4th at pp. 1054-1055 & fn. 9.)

## C.

We also reject the Bottini firm's argument that the trial court abused its discretion by declining to apply a multiplier to the document review lodestar.

"The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee 'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' " (*Laffitte, supra,* 1 Cal.5th at p. 489.)  Counsel who seek fee enhancement in the form of a discretionary multiplier bear the burden of proof.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1137–1138; *Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438, 453-456; *Thayer, supra,* 92 Cal.App.4th at p. 835.)

Here, the trial court concluded the Bottini firm did not meet its burden.  The Bottini firm did not specifically justify its demand for a multiplier.  Instead, in its briefs, it argued to the trial court that a 1.5 multiplier is reasonable because Judge Karnow used that multiplier

11

when calculating the original fee award. The argument is misguided because Judge Karnow did not use a multiplier to calculate the original fee award; rather, the fee award was based on a percentage of the class recovery, and Judge Karnow only referenced *lead counsel*'s lodestar and an approximate multiplier for purposes of cross-checking the percentage award's reasonableness.  The trial court did not abuse its discretion.

**D.**

The trial court concluded the Bottini firm is not entitled to postjudgment interest because the amount of its fee award had not yet been calculated.  (See *City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, 1482-1483.)  The Bottini firm contends this was error but has forfeited its argument by failing to cite supporting legal authority.  (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007.)

**E.**

In the alternative, the Bottini firm contends this dispute must be decided by arbitration.  But the record contains no evidence of a written agreement to arbitrate this dispute.  (See Code Civ. Proc., § 1281 et seq.; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [moving party required to present "evidence of a written agreement to arbitrate the controversy"].)  To the extent the Bottini firm relies on estoppel, it has forfeited the argument by failing to present a reasoned legal argument.  (*Berger v. California Ins. Guarantee Assn.*, *supra*, 128 Cal.App.4th at p. 1007.)

We need not address the parties' additional arguments.

**DISPOSITION**

The order is affirmed.  The Scott firm is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____
BURNS, J.

We concur:

_____
SIMONS, ACTING P.J.

_____
NEEDHAM, J.

A158660