Filed 12/12/22  James S. v. Tony M. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMES S., et al.,<br><br>      Plaintiffs and Respondents,<br><br>v.<br><br>TONY M., et al.,<br><br>      Defendants and Appellants. | A163465<br><br>(San Francisco County<br>Super. Ct. No. CCH-21-583694) |

The trial court granted a civil harassment restraining order against appellants Tony M. and his wife Shelli M. pursuant to Code of Civil Procedure section 527.6 (section 527.6) based on their conduct in an on-going dispute with their neighbors, respondents James S. and his wife Mihaela P.[1] Tony and Shelli appeal, arguing that the court denied them due process and that the order is not supported by substantial evidence.  We reverse the order as to Shelli and affirm the order as to Tony.  Given our actions, two important points require further mention.  First, we reached our determination about the legal appropriateness of the trial court's order concerning Tony by only the narrowest of margins, but ultimately arrived at our decision by the strict application of the deferential legal standards that

---

[1] We refer to the parties and witnesses by their first names to protect their privacy.  (California Rules of Court, rule 8.90(b)(5)).

guide this appeal. Second, our decision focuses on the legal principles relevant to the appeal, especially as they relate to any asserted due process violations, and it should not be construed as a full endorsement of the trial court's manner of conducting the hearing of the matter.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts in the light most favorable to the judgment. (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1405 (*Brekke*).) The parties are neighbors who live next door to each other in separate houses. In 2018, James and Mihaela initiated a process to remodel and expand their home. Tony and Shelli sent Mihaela multiple text and email messages asking for information about the remodel. If Mihaela did not respond with the information, Tony and Shelli reportedly would become aggravated and send her more messages. In January 2020, Shelli filed a petition for discretionary review with the San Francisco planning department, which was denied. At this point, Tony and Shelli became "very agitated."

In July 2020, Tony and Shelli accused Mihaela of having received a package that was intended for Shelli. Mihaela told Shelli that she did not have her package, but Tony continued to text her about it and at one point followed her into her garage and accused her of taking it. James and Mihaela consulted with an attorney and sent two "cease and desist" letters, demanding that Tony and Shelli cease communicating with them, stalking them, and coming onto their property.

In February 2021, Shelli filed a site permit appeal regarding the remodel by James and Mihaela, but did not submit a written brief or attend the appeal hearing. At the hearing, an appeal board commissioner commented that Tony and Shelli's failure to appear was "very disappointing" and constituted a waste of resources. Another commissioner suggested that

2

Tony and Shelli had committed an "an abuse of the process" that felt "vindictive." During the hearing on the restraining order, Shelli said that she had received a postcard informing her that James and Mihaela had made changes to their building plans. Shelli explained that she decided not to pursue the appeal after she was allowed to review the plans and saw that no changes had actually been made, but she did not know how to "unappeal" the appeal. Shelli and Tony did not introduce this postcard into evidence. Mihaela testified that no plan changes had been made and she was never copied on the alleged postcard.

On the night of April 29, 2021, James was walking his 20-year-old dog on the public sidewalk near the home of Tony and Shelli when he heard an alarm. Tony charged out of his house and reportedly yelled, "get your fucking dog off my lawn. I'm going to kick your dog and punch you in the face if you don't get off." When Mihaela heard shouting and came outside, Tony allegedly threatened her by yelling "get off my fucking property or [I] will kick you and your dog if she pees in front of my house one more time." Shelli also yelled at James from the third story balcony of her house.

On May 10, 2021, James filed a request for a civil harassment restraining order. He sought protection from Tony and Shelli for himself as well as for his wife and their dog. In their response, Tony and Shelli argued that their prior actions were taken in pursuit of a legitimate purpose. They also denied the harassment allegations by James and Mihaela.

At the June 23, 2021 hearing, James testified that the lawn is public space and that "[e]verybody walks there all the time because it is public space."[2] James stated that after the alarm went off, the garage door to the

_____

[2] Mihaela testified that the lawn in front of respondents' house is also public property and that she and James maintain the space.

3

home of Tony and Shelli suddenly opened, and Tony charged out looking enraged, yelling and threatening to hit him and kick the dog if they did not get off his lawn. Mihaela stated that when she realized that Tony was yelling at her husband, she ran outside and asked what was going on. Tony said words to the effect that he was going to hit her and kick the dog if the dog ever peed on his lawn again. In rebuttal, Tony testified that he had not made any threats towards James, Mihaela, or their dog, but acknowledged he was upset, explaining that he had been asleep and was frightened when the alarm went off because there had been prior burglaries. Tony and Shelli submitted a home security camera video of the incident.

The trial court issued its ruling from the bench, first noting that the case "raises some complicated issues for the Court because there is some legitimate purpose to some of the conduct and inquiring about the changes [to the property] you were making; however, over time it got to be clear that there was no issue with the property and steps that were taken after that did not seem to serve a legitimate purpose to the Court." As to the dog incident, the court found Tony's testimony lacked credibility, stating, "clearly, the video speaks for itself. He was aggressive. He was yelling. I mean get your dog. Whatever it was, was startling to me." The court also found that the conflict over the allegedly stolen package was "disturbing" in that Tony and Shelli had repeatedly accused James and Mihaela of theft without having any proof. The court found by clear and convincing evidence that "there has been some harassment in this case."

On June 23, 2021, the trial court filed its orders prohibiting Tony and Shelli from harassing or contacting James and Mihaela, and requiring them generally to stay 50 yards away from James, Mihaela, and their dog, but only

4

3 yards away from them when on the parties' block. The orders expire June 23, 2023. This appeal followed.

## II. DISCUSSION

### A. Applicable Law and Standard of Review

Section 527.6 authorizes a person who has suffered harassment to "seek a temporary restraining order and an order after hearing prohibiting harassment." (§ 527.6, subd. (a)(1).) The statute defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Id.,* subd. (b)(3).) At the hearing on a section 527.6 petition, the judge "shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (*Id.,* subd. (i).)

"We review issuance of a protective order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence." (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) " 'The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] But whether the facts, when construed most favorably in [the petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of

5

law subject to de novo review.' [Citation.]" (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497.)

In evaluating a sufficiency of the evidence claim when the clear and convincing standard of proof is applied by the trier of fact, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B., supra,* 9 Cal.5th 989 at pp. 995-996.)

## B.     The Trial Court Did Not Deny Appellants Due Process

Appellants assert that the trial court deprived them of due process by (1) admitting that it could not clearly hear the audio portion of the video of the dog-walking encounter, (2) revealing bias and lack of impartiality in comments made during the hearing, and (3) arbitrarily refusing to consider a written transcript of the video's audio.

"The essence of due process is notice and the opportunity to be heard." (*Andre v. Superior Court* (1991) 2 Cal.App.4th 11, 19 (*Andre*); accord, *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314.) Due process is violated when a party is not "afforded the right to present his arguments against the proposed ruling." (*Andre, supra,* at p. 19.) Due process also entitles a litigant to an impartial decision maker. (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1025.)

The record refutes the assertion that the trial court deprived appellants of due process. As to the video, they argue that the court "refused to consider the full video of the April 29, 2021 incident" when it "admitted that it could not hear the audio portion of the video." They assert the audio directly contradicted respondents' allegations that Tony had threatened to hit or kick them and their dog, and that Shelli was yelling.

Contrary to appellants' argument, the record shows that the trial court *did* fully consider both the visual and the audio portions of the video. When the video was played during the hearing on a laptop provided by appellants' attorney, the trial judge indicated that she could not clearly hear what was being said, eventually stating: "I am done with this. I can't hear. It is what it is. It was a muffled sound. I couldn't make it out." The court also declined to consider appellants' transcript of the audio because the transcript was not certified, stating, "I am not willing to accept someone else's interpretation of what was said." Our own review of the video validates the court's comments regarding its poor audio quality.[3] The sound is muffled and the verbal exchanges are, at times, difficult to make out. However, one can observe that almost immediately after Tony exited his residence, he aggressively approached respondents' elderly dog and yelled at it.

Citing to California Rules of Court rule 2.1040(b)(1), appellants assert that the trial court erred in refusing to review their transcript of the audio because a certified transcript is not required. However, they did not object to the court's ruling at the hearing, thereby forfeiting the issue. (See *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 284 [questions relating to

---

[3] Of course, we have no way of determining the audio quality of the video as it was played on appellants' attorney's laptop at the hearing.

the admissibility of evidence will not be reviewed on appeal absent a specific and timely objection at the trial on the ground sought to be urged on appeal].)

We also disagree with appellants' assertion that the trial court exhibited bias at the hearing. Appellants contend the court showed bias by refusing an apology by counsel, by making a sarcastic comment ahead of a portion of appellants' testimony, and by arbitrarily excluding their evidence while accepting similar evidence offered by respondents. The contentions ultimately lack merit.

As the United States Supreme Court has explained, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." (*Liteky v. United States* (1994) 510 U.S. 540, 555.) And where the criticism involves procedural matters, "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." (*Id*. at p. 556.)

We view claims of bias through this legal prism, which essentially precludes a sharper evaluation and determination about whether the trial court's actions in conducting the hearing were estimable under the circumstances it faced. In other words, our inquiry necessarily focuses on the due process concerns raised by appellants, as opposed to the highest standards of judicial conduct that ought to guide all jurists in any proceeding.

It is true that the trial judge criticized appellants' attorney for failing to submit to the court any of the evidence that she introduced at the hearing. When the court asked the attorney why she had filed a brief without including all the exhibits, she stated that she "just thought we would go through it at the hearing." The court advised that the proceedings were "not like a single court hearing, that this Court has many hearings." At the same

8

time the court stated, "[s]o I am trying to be as courteous as possible, but the idea is to give the information to the Court so that the Court can review it before the date of the hearing, and that way, we can move along." Shortly thereafter, the court expressed frustration when appellants' counsel sought to play the video of the dog incident. After taking a short break, the court admonished counsel for disrespecting the court by failing to submit so many items of evidence before the hearing. When counsel apologized and explained that she had never been required provide a court with this type of information in advance of a hearing, the court refused to accept the "backhanded" apology, but allowed counsel to continue presenting her case.

While the trial court's remarks were pointed, the comments themselves do not suggest that the court was biased against appellants, especially given the time constraints on the hearing.[4] And even though the court expressed impatience, it nevertheless permitted appellants' counsel to fully present her clients' case.

As to the alleged sarcasm, appellants complain that towards the end of the hearing, when appellants' counsel asked to question her clients regarding allegations that Shelli had used pesticides on respondents' property and had trimmed their hedges, the court responded: "not if it is going to be a litany like, let's say from – we are not going to have a Shakespearean speech. They can address it briefly." We discern no judicial bias. While the court clearly wished to conclude the hearing, it thereafter allowed Shelli to testify that she had used organic products on appellants' yard, not pesticides, and that she never trimmed respondents' hedges.

_____

[4] The hearing commenced at 10:52 a.m. The court indicated that the hearing needed to conclude by noon. Appellants did not seek to introduce the video as evidence until 12:00 p.m. The hearing ultimately adjourned at 12:36 p.m.

9

Appellants also contend that the trial court demonstrated bias by accepting respondents' evidence of " 'caption notes' " taken at the board of appeals hearing, while refusing to consider their video transcript.  We are not persuaded.  Although appellants claim that respondents' document was admitted before their attorney had the opportunity to object on foundation or authentication grounds, they do not explain why their attorney could not have made a record of an objection at the hearing.  Accordingly, this contention is also forfeited for failure to object below.

In sum, we conclude that the trial court did not violate appellants' due process rights.

## C.    Lack of Substantial Evidence As To Shelli M.

Appellants assert that substantial evidence does not support the civil harassment restraining order as to Shelli.  They claim the order is unjustified because "the majority of the allegedly harassing conduct (i.e., harassing texts and emails, conduct related to the missing package, and cutting hedges and spraying pesticide) took place prior to the cease and desist letters."  They argue that there was no substantial evidence to suggest a likelihood of future harassment.  They also assert that the trial court erred by finding that Shelli's act of filing the site permit appeal constituted harassing conduct, and in relying on its own experience when it allegedly discounted Shelli's claim that respondents had altered evidence regarding the number of text messages that she had sent to Mihaela

We agree that the order against Shelli is not supported by substantial evidence.  It is undisputed that after respondents sent appellants the cease-and-desist letters in July 2020, Shelli filed and later failed to withdraw a site permit appeal against respondents.  Apart from her failure to prosecute the appeal, there was no evidence that she had engaged in any harassing conduct

10

towards respondents since July 2020.[5] We note that "an injunction restraining future conduct is authorized by section 527.6 only when it appears from the evidence that the harassment is likely to recur in the future." (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 189.) Even if Shelli's conduct prior to July 2020 could have been characterized as harassment under section 527.6, there is no evidence in the record that this conduct was likely to persist. The evidence instead shows that Shelli was complying with respondents' cease-and-desist requests, and her failure to pursue the site permit appeal, standing alone, does not support the issuance of a restraining order. Accordingly, we conclude the order as to Shelli is not supported by substantial evidence.

## III. DISPOSITION

The order issued pursuant to section 527.6 is reversed as to Shelli M. The case is remanded to the trial court to vacate its order concerning Shelli M. in conformity with this opinion. The trial court order regarding Tony M. is affirmed. The parties are to bear their own costs on appeal.

---

[5] In their petition, respondents stated that during the April 2021 dog-walking incident Shelli said something while standing on her third floor balcony, however, they could not make out what she was saying.

11

DEVINE, J.*

WE CONCUR:

HUMES, P. J.

MARGULIES, J.

A163465N

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.